Wayne W. FUNK and Ruth M. Funk, Plaintiffs-Appellants,

v.

WOLLIN SILO & EQUIPMENT, INC. and Heritage Mutual Insurance Company, Defendants-Respondents.

Supreme Court

*No. 86–2089. Argued October 4, 1988.—Decided February 14, 1989.*

(Also reported in 435 N.W.2d 244.)

For the plaintiffs-appellants there were briefs (in court of appeals) by *Michael D. O'Brien* and *Feingold & Bates,* Janesville, and oral argument by *David B. Feingold.*

For the defendants-respondents there were briefs (in court of appeals) by *Arthur P. Simpson* and *Snodgrass & Simpson,* Milwaukee, and oral argument by *Arthur P. Simpson.*

Amicus curiae briefs were filed by *Lawrence Bensky, Richard M. Burnham* and *LaFollette & Sinykin,* Madison, for Wisconsin Housing and Economic Development Authority; and *D.J. Weiss* and *Johnson, Weiss, Paulson & Priebe, S.C.,* Rhinelander, for Wisconsin Academy of Trial Lawyers.

HEFFERNAN, CHIEF JUSTICE. This is an appeal from a judgment of the circuit court for Rock county taken on the certification of the court of appeals, which judgment dismissed the Funks' complaint alleging damages caused by the negligent construction of a silo by Wollin Silo & Equipment, Inc. (hereinafter Wollin).

The circuit court dismissed the action because it concluded that, under sec. 893.89, Stats.,[1] the period within which the action could be brought had expired. Because this court in *Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 225 N.W.2d 454 (1975), held a somewhat similar predecessor statute unconstitutional, the court of appeals expressed doubt whether the deficiencies noted in *Kallas* had been sufficiently corrected and therefore certified the case to this court.

The question presented is one of law: Is sec. 893.89, Stats., unconstitutional because its classification scheme violates the equal-protection clauses of the United States Constitution and the Constitution of the State of Wisconsin? We conclude that the equal-protection clauses are violated and the statute is unconstitutional.[2]

We reverse the circuit court and remand the case for further proceedings.

The agreed facts are that the Funks contracted with Wollin to build a silo on their property. It is agreed

---

[1] **893.89 Action for injury resulting from improvements to real property.** No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement to real property, more than 6 years after the substantial completion of construction. If the injury or defect occurs or is discovered more than 5 years but less than 6 years after the substantial completion of construction, the time for bringing the action shall be extended 6 months.

[2] We have given the equal-protection provision of the Wisconsin Constitution and the parallel clause of the United States Constitution identical interpretation. *State ex rel. Sonneborn v. Sylvester,* 26 Wis. 2d 43, 49, 132 N.W.2d 249 (1965).

that the silo was an "improvement to real property" and was substantially completed on August 6, 1977. On April 2, 1984, almost seven years later, Wayne Funk fell and was injured. He alleges that the fall and injuries were proximately caused by the negligence of Wollin and that the silo ladder was defective when it was installed by Wollin.[3] Action was commenced against Wollin on June 17, 1986. Wollin answered, asserting that the plaintiffs' claims were barred by sec. 893.89, Stats. Summary judgment for the defendant, dismissing the plaintiffs' complaint, was entered on October 23, 1986. The file reveals only an order for judgment and judgment. No opinion of the circuit court is to be found in the record. Appeal was timely taken by the Funks. The appeal was accepted by this court on the certification of the court of appeals.

Wayne and Ruth Funk (hereinafter Funk) argue that present sec. 893.89, Stats., like its somewhat similar predecessor statute, sec. 893.155, Stats. (1965),[4]

---

[3]It should be noted that defendant in a footnote to its brief in the circuit court adverts to the ladder as being manufactured not by Wollin but by another. Nevertheless, the posture of the case to date is predicated upon the "errors and omissions" of Wollin. The possible separate liability of the component manufacturer is not briefed by either party and is not considered on this appeal.

[4]Section 893.155, Stats. (1965), read:

> **Within 6 years.** No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 6 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and

found to be violative of equal protection in *Kallas Millwork Corp. v. Square D Co.,* 66 Wis. 2d 382, 225 N.W.2d 454 (1975), is also unconstitutional.

The principal attack on the *Kallas* statute was on the basis of the violation of equal protection, because the special protection of the statute was afforded to "those persons who perform and furnish the 'design, planning, supervision of construction or construction' of improvements to real property—[but not to] other classes, such as materialmen, who are ignored by the statute, and owners and occupants, who are specifically excepted." *Kallas,* 66 Wis. 2d at 389.

Applying the five criteria then recently restated in *Dane County v. McManus,* 55 Wis. 2d 413, 423, 198 N.W.2d 667 (1972), which must be satisfied to sustain a legislative classification against an equal-protection attack, we concluded that classification violated the constitutions of the State of Wisconsin and of the United States. We in part relied upon the analysis of Mr. Justice Walter Schaefer in *Skinner v. Anderson,* 38 Ill. 2d 455, 231 N.E.2d 588 (1967). Writing for the Illinois Supreme Court, he stated, "'If ... the objective of the statute is to require that trials of actions based upon defects in construction be held within a relatively short time after the work is completed, that objective is achieved ... in a discriminatory fashion.'" *Kallas,* 66 Wis. 2d at 389. *Skinner* went on to point out that others in the construction process were not protected—materi-

---

control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.

This statute was amended to its present form on June 12, 1976, by the Laws of 1975, ch. 335. The statute was renumbered by the Laws of 1979, ch. 323, from 893.155 to 893.89.

almen and suppliers. Additionally, "'Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.'" *Kallas,* at 390.

On the basis of *Skinner,* the Hawaiian case of *Fujioka v. Kam,* 55 Hawaii 7, 514 P.2d 568 (1973), and our own classification analysis, we held "that the legislative classification that gives special protection to the protected group is unreasonable." *Kallas,* at 391.

We did, however, state that, "there are public policy reasons that might justify a limitations period that takes into consideration those who are engaged in the construction business." *Kallas,* at 391.

The legislature in 1975 attempted to revise sec. 893.155, Stats., in a manner that would meet the strictures of the *Kallas* equal-protection analysis. It failed in that attempt. The revised statute now appearing as sec. 893.89 suffers from substantially the same deficiencies as the earlier one.

Section 893.89, Stats. provides as follows:

**893.89 Action for injury resulting from improvements to real property.** No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement to real property, more than 6 years after the substantial completion of construction. If the injury or defect occurs or is discovered more than 5 years but less than 6 years after the substantial completion of

construction, the time for bringing the action shall be extended 6 months.

The legislature in 1975, in amending sec. 893.155, Stats., made specific findings and a statement of intent as follows:

(1) Findings. The legislature finds that:

(a) Subsequent to the completion of construction, persons involved in the planning, design and construction of improvements to real estate lack control over the determination of the need for, the undertaking of and the responsibility for maintenance, and lack control over other forces, uses and intervening causes which causes stress, strain, wear and tear to the improvements and in most cases have no right or opportunity to be made aware of or to evaluate the effect of these forces on a particular improvement or to take action to overcome the effect of these forces.

(b) It is in the public interest to set a point in time following the substantial completion of the project after which no action may be brought for errors and omissions in the planning, design and construction of improvements to real estate, whether these errors and omissions have resulted or may result in injury or not. This legislation is determined to be in the public interest and in the interest of equating the rights to due process between prospective litigants in the area of planning, design and construction of improvements to real property in an equitable manner.

(2) Intent. In this act, the legislature intends that:

(a) This act shall bar any action for defects, unsafe conditions, errors and omissions in the planning, design or construction of improvements to real estate after the times limited in this act.

(b) This act shall not deprive any person of any rights or remedies such person may have against persons other than those enumerated in this act for damages to property or injury to persons resulting from defective or unsafe conditions of improvements to real estate.

(c) A cause of action, for the purposes of section 893.14 [see, now, § 893.10] of the statutes, shall be deemed to accrue as of the time of the alleged wrongful act.

Laws 1975, ch. 335.

Thus, under the amended statute "land surveying" and "materials" were added to the itemization of services that might be performed as improvements to real property and, hence, were protected activities. The new statute substituted the initiating time as "substantial completion of construction" in place of the words of the earlier statute, "performance or furnishing of such services." Omitted from the statute was the sentence which provided, "This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective or unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action." Also, a grace period was provided which allows an extension of six months within which to bring an action "[i]f the injury or defect occurs or is discovered more than 5 years but less than 6 years after the substantial completion of construction."

The substantive effect of the change, insofar as classification is concerned, is merely to add surveyors and material suppliers to the protected class. Owners and occupiers of land are still in the non-protected class. This deficiency alone places the new statute

within the proscription of *Kallas*. Although the body of the statute no longer specifically excepts owners or occupants, the attached Finding (2) (b) states that any omitted classifications are not protected by the statute.[5]

Additionally, the separately stated legislative findings, *supra,* attempted to provide a rationale for what is not explained as reasonable in the body of the statute by reciting in Finding (1) (a) that there is a distinction between persons who have a hand in planning, design, and construction and those who subsequently own and occupy the improvement, for the former have no control while the latter do have control of the property at the time of the injury. As will be discussed *infra,* this is a distinction without a relevant difference.

The legislature also added a finding that the specific legislation was in the public interest, because it set a time following the completion of a construction project when no action could be brought. This statement is a legislative conclusion, but does not state a reason why the particular time limitation, rather than another, is in the interest of the public.

Before proceeding to a discussion of the merits of the constitutional question, we address an issue raised by defendant at oral argument. The assertion was made that Funk lacked standing to assert his claim. It was argued that standing would ensue only if the plaintiff were in a position to complain that he was improperly denied the protection afforded to the classes recited in the statute, *i.e.,* that he was wrongly excluded from a protected class. That position finds support in the

---

[5]Comment, *Defective Design—Wisconsin's Limitation of Action Statute for Architects, Contractors and Others,* 63 Marq. L. Rev. 87 (1979), is an excellent discussion of the revisions and changes made by the legislature in response to *Kallas.*

court of appeals' decision in *Hartland-Richmond Town Ins. Co. v. Wudtke,* 145 Wis. 2d 682, 429 N.W.2d 496 (Ct. App. 1988). There, it was held that a plaintiff situated similarly to the plaintiff here had no standing to sue. The court of appeals' conclusion there, and if valid equally applicable here, was that the plaintiff could only complain if he were denied the same protection afforded to the protected class, *e.g.,* if an owner were being sued by a third person, he might have standing to claim he was, by an improper classification, denied protection; but as a plaintiff suing one within a protected class, there was not standing to bring the action. We disagree and expressly overrule the court of appeals holding in that respect. Here Funk had a "pronounced economic stake in challenging the statute." *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 563, 426 N.W.2d 33 (1988). In *Mast v. Olsen,* 89 Wis. 2d 12, 16, 278 N.W.2d 205 (1979), we stated, "A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action." Funk has every incentive in this instance to argue the unconstitutionality of the statute. Other jurisdictions have addressed the same question of standing of an aggrieved owner in respect to the same type of statute. *See Klein v. Catalano,* 386 Mass. 701, 714, 437 N.E.2d 514 (1982), where the Massachusetts court pointed out that an injured plaintiff land-owner's interest "in the equal protection issue is as great as that of the materialmen, owners, tenants, and others in control or possession, who he claims are excluded from the statute. We think that the plaintiff has standing in a representative capacity to raise the rights of the potential defendants excluded from the statute." *See* to the same effect: *Fujioka v. Kam,* 55 Hawaii 7, 514 P.2d 568 (1973); *Loyal*

*Order of Moose v. Cavaness,* 563 P.2d 143, 93 A.L.R. 3d 1234 (Okla. 1977); *Turner Const. Co. v. Scales,* 752 P.2d 467, 470 (Alaska 1988). As the Alaska opinion points out, no final appellate court that has addressed the issue has denied standing to persons such as the plaintiff in this case. Funk had standing to assert the unconstitutionality of the statute.

We reiterate the standard of review and the method of analysis used in *Kallas.* In *City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440 (1985), it was pointed out that, where fundamental rights or suspect classes are not involved, courts employ only a rational basis as standard of review. "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." We used the same standard in *Kallas,* stating that legislation is invalid "[o]nly if the classification is arbitrary and has no reasonable purpose or reflects no justifiable public policy."[6] *Kallas,* 66 Wis. 2d at 388.

■

The rationality of the classification is related to the purpose of the legislation. As we said in *Kallas,* an equal-protection violation is not to be found merely because some inequality results from the classification. A classification will be held constitutional if there exists a rational and reasonable basis for different treatment.

There may be a rational basis for some different treatment to be afforded to those in the construction industry from the treatment afforded other tortfeasors.

---

[6]It should be repeated that it is the classification that must be reasonable, not merely the general purpose or policy of the statute. The legislature in its statement of public interest did not give due weight to this question.

The impetus to give that special treatment, no doubt, was the fall of the doctrine of privity, which resulted in potential liability of architects and engineers to a broad spectrum of plaintiffs with whom those in the construction industry had never had to deal. As of 1978, 43 states, plus the District of Columbia, had enacted statutes giving special treatment to suits against builders. Collins, *Limitations of Action Statutes for Architects and Builders—An Examination of Constitutionality,* FIC Quarterly (Fall 1978).[7] The general purpose of the Wisconsin statute in this case was stated as a finding appended to the act revising the 1965 statute:

> (b)  It is in the public interest to set a point in time following the substantial completion of the project after which no action may be brought for errors and omissions in the planning, design and construction of improvements to real estate, whether these errors and omissions have resulted or may result in injury or not. This legislation is determined to be in the public interest and in the interest of equating the rights to due process between prospective litigants in the area of planning, design and construction of improvements to real property in an equitable manner.

Laws of 1975, ch. 335.

Thus, there is a rationale expressed that might tend to justify some special protection to tortfeasors whose liability, under ordinary tort rules, could potentially exist for decades. We said as much in *Kallas,* 66 Wis. 2d at 391, stating, "[T]here are public policy reasons that might justify a limitations period that

---

[7]A number of these statutes have been held unconstitutional on grounds of equal protection and for the denial of rights.

takes into consideration those who are engaged in the construction business ...."

However laudable the general public purpose might be, it is the means used to effect that public purpose that is under scrutiny when an equal-protection challenge is asserted.

Here the questioned statute is presented by the legislature as a statute of limitations. There is a facade of ordinariness about sec. 893.89, Stats., that is deceptive. It is placed in a chapter entitled "Limitations of Actions," and the statement of intent uses the usual limitation language of accrual of a cause of action.[8] Examination of the statute reveals that it is anything but ordinary. It limits actions in a manner unrelated to "accrual" of a cause of action or the sustaining of injury or damages. Under this statute, an action may be barred before the injury is ever sustained or before any right to bring suit arises.

Unlike the usual statute of limitations, this statute does not encourage the prompt commencement of suit after injury and does not discourage bringing suits that have grown stale by the passage of time after an injury has been sustained. Even the test that a cause of action "accrues" when a plaintiff knows, or ought to know, that a injury has been sustained is meaningless in the context of sec. 893.89, Stats. Because this is an unusual statute, it should be examined with care, albeit if only to determine that its classifications are rationally related to a legitimate purpose. Basically, this is an immunity statute, not a statute of limitations. No matter how diligent a plaintiff may be, he will be foreclosed from bringing a legal action, because any

---

[8] "A cause of action ... shall be deemed to accrue as of the time of the alleged wrongful act." Finding (2)(c).

injury sustained after six years have passed following the substantial completion of construction will be without remedy.

It is not asserted that, in the absence of some constitutional obstacle, the legislature cannot abrogate legal rights that have not vested. It appears clear that, from the federal point of view, there is no constitutional objection to abolition of a common law cause of action. *Silver v. Silver,* 280 U.S. 117 (1929). In effect, sec. 893.89, Stats., abolishes a common law cause of action, because a person cannot, and should not, sue before he has reason to believe he has been injured. And when he does become aware of the tort inflicted upon him, it may already be too late. "Injury" in contemplation of the law is such harm as the law recognizes to be actionable, but injury that maybe actionable if manifested within six years will not be if manifested at any date later than that.

The uniqueness of this statute and its incongruity with the usual philosophy of statutes of limitation which have as their objectives the prompt vindication of discovered wrongs by legal redress before memories have faded or defenses have been lost by the passage of time is stated in a somewhat similar context by Judge Jerome Frank. He wrote in a dissent to *Dincher v. Marlin Firearms Co.,* 198 F.2d 821, 823 (2d Cir. 1952):

> Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i.e.,* before a

judicial remedy is available to the plaintiff. For a limitations statute, by its inherent nature, bars a cause of action solely because suit was not brought to assert it during a period when the suit, if begun in that period, could have been successfully maintained; the plaintiff, in such a case, loses for the sole reason that he delayed—beyond the time fixed by the statute—commencing his suit which, but for the delay, he would have won.

Having in mind, however, the legislative intent to promote the public interest, we move on to the consideration of whether the classification employed constitutes a denial of equal protection.

Much of our decision herein is a matter of *stare decisis* based upon *Kallas.* We invalidated the predecessor of this statute because no reasonable distinction could be found between the builders in the protected class and others like materialmen and owners who were not protected by the statute. As pointed out above, furnishers of materials and land surveyors have now been included in the protected class. No doubt, this reduces the under-inclusiveness of the statute, but owners or occupants who may be liable to suit by third parties as the result of design defects or construction errors or omission are not in the protected class.

A rationale is set forth in the findings that accompanied the revision in 1976.[9]

---

[9] (1) Findings. The legislature finds that:

(a) Subsequent to the completion of construction, persons involved in the planning, design and construction of improvements to real estate lack control over the determination of the need for, the undertaking of and the responsibility for maintenance, and lack control over other forces, uses and intervening causes which causes stress, strain, wear and tear to the improvements and in most cases have no right or opportunity to be made aware of or to evaluate the

The legislature's justification for denying protection to owners, occupants, or tenants is that they have post-construction control over the premises, while the protected groups—persons "performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement"—do not. This indeed is a distinction, but it is a legally irrelevant distinction in the context of the statute.[10] "Control" is irrelevant to the fundamental problem the statute purportedly addresses, the long-term liability—the "long tail of liability"—that accompanies torts of commission or omission in the construction of durable buildings.

Both owners and tenants unprotected by the statute, as was acknowledged at oral argument, may be subject to long-term liability for harms that result from the torts of the protected class. Liability is not terminated when it is shifted to another class whose ability to compensate for injuries is questionable. Despite the implied premise of Finding (1)(a), the fundamental fact is that builders in no event would be liable for injuries resulting from negligent maintenance of those in control of the building. Nor, in fact, absent Safe Place concerns, would an owner be liable, even initially, for errors in design or construction that were not reasonably ascertainable by the owner or tenant. The reality is that, even without the special interest immunity stat-

---

effect of these forces on a particular improvement or to take action to overcome the effect of these forces.

[10]*Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978), quotes the standards for classifications mandated by the Pennsylvania Constitution. In respect to classifications which may be invalidated by judicial revision are those founded not "'on real distinctions in the subjects classified, [but on] artificial or irrelevant ones.'" 476 Pa. at 275.

ute in question here, those in the construction business are not legally liable for injuries that were caused by the errors or omissions of others—those in "control." Control, as envisaged by the statute, is a distinction without relevance. Although the words of Finding (1)(a), "persons involved in the planning, design and construction of improvements to real estate lack control over the determination of the need for, the undertaking of and the responsibility of maintenance, and lack control over other forces, uses and intervening causes which causes stress, strain, wear and tear to the improvements," are factually correct, those in the construction business would have no liability whatsoever for control negligence. The legislative finding in respect to control is immaterial when used as a rationale to justify this statute. On the other hand, as stated in *Skinner v. Anderson,* 38 Ill. 2d 455, 231 N.E.2d 588 (1967), quoted with approval in *Kallas,* 66 Wis. 2d at 389, "'It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.'"

To similar effect was *Fujioka v. Kam, supra,* also quoted with approval in *Kallas,* 66 Wis. 2d at 391. The most recent case brought to our attention is *Turner Construction Co. v. Scales,* 752 P.2d 467 (Alaska 1988). Therein the Alaska court stated:

> One effect of the statute of repose is to eliminate the statutory right of contribution among tortfeasors. ... therefore, each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensa-

75

ble damages attributable to that injury. It follows that whenever an unprotected owner is 50% at fault and a protected contractor is 50% at fault, the unprotected owner would be 100% liable for all damages, without a remedy for contribution. The statute of repose, therefore, does not entirely abrogate liability for defective design work, but shifts it. . . .

[T]here is no substantial relationship between exempting design professionals from liability, shifting liability for defective design and construction to owners and material suppliers, and the goal of encouraging construction. The shift of liability to unprotected parties decreases their incentive to build in corresponding measure to the increased incentives of protected parties. If anything, the disincentive on the part of owners may be greater than their proportional measure of liability shift, because they may be liable for a product over which they have no control. Moreover, design defects may be catastrophic, and experimental designs shift correspondingly greater unknown risks to owners, giving them even more reason not to finance construction. Thus, we believe that the statutory means are not substantially or rationally related to the ends. We conclude that AS 09.10.055 violates the equal protection clause .... *Turner*, 752 P.2d at 471–72.

It should be noted also that, even were we to give credence to the "control" rationale, the legislature did not apply it with consistency. Component parts manufacturers have even less control over a completed building than do architects and engineers, who may, at least, conduct inspections prior to turning buildings over to owners. Yet component parts manufacturers are not protected by the statute. *See Swanson Furniture v. Advance Transformer*, 105 Wis. 2d 321, 313 N.W.2d 840

(1982). "Control" as a standard to justify the under-inclusiveness of the statute is unrelated to the fundamental purpose for which the statute was intended. It is a meaningless distinction.

The arbitrary non-inclusion of property owners and tenants was not cured by the addition of land surveyors and materialmen to the protected class. Although the legislature purported to cure the under-inclusiveness which invalidated the statute considered in *Kallas,* it failed to do so in a meaningful way.

Although we have alluded to the problem potentially posed when a litigant is deprived of his cause of action before it has "accrued" in the normal sense, we do not find it necessary to explore that problem in this opinion, because the statute is unconstitutional on equal-protection grounds. The statute still affords its protection and favors without a reasonable and rational basis. It violates the Wisconsin and United States constitutional guarantees of equal protection in the same way, albeit perhaps to a lesser degree, than did sec. 893.155, Stats., the statute in *Kallas.* The statute as revised, sec. 893.89, is unconstitutional. In so holding, we overrule the language of *Hartland-Richmond Town Ins. Co. v. Wudtke,* 145 Wis. 2d 682, 429 N.W.2d 496 (Ct. App. 1988), which sustained the constitutionality of sec. 893.89.

*By the Court.*—The judgment is reversed and the cause is remanded to the circuit court for further proceedings.