Julie MAIR,
Plaintiff-Appellant-Petitioner,

v.

TROLLHAUGEN SKI RESORT and
American Home Assurance Company,
Defendants-Respondents.

Supreme Court

*No. 2004AP1252.—Oral argument March 14, 2006.
—Decided June 6, 2006.*

2006 WI 61

(Also reported in 715 N.W.2d 598.)

134

For the plaintiff-appellant-petitioner there were briefs by *Michael J. Brose, Anne E. Schmiege,* and *Doar, Drill & Skow, S.C.,* New Richmond, and oral argument by *Michael J. Brose.*

For the defendants-respondents there was a brief by *Todd Joseph Koback* and *Terwilliger, Wakeen, Piehler & Conway, S.C.,* Wausau, and oral argument by *Todd Joseph Koback.*

An amicus curiae brief was filed by *William C. Gleisner, III,* and *Law Offices of William C. Gleisner, III,* Milwaukee, on behalf of the Wisconsin Academy of Trial

Lawyers, and there was oral argument by *William C. Gleisner.*

An amicus curiae brief was filed by *Thomas M. Pyper, Steven W. Keane,* and *Whyte Hirschboeck Dudek S.C.,* Milwaukee, on behalf of the Wisconsin Builders Association, Associated Builders and Contractors of Wisconsin, Inc., Associated General Contractors of Wisconsin, Inc., American Institute of Architects - Wisconsin Chapter, and American Council of Engineering Companies of Wisconsin, Inc., and there was oral argument by *Steven W. Keane.*

¶ 1. JON P. WILCOX, J. The petitioner, Julie Mair (Mair), seeks review of a published decision of the court of appeals affirming a summary judgment order of the Polk County Circuit Court, Molly E. GaleWyrick, Judge, that dismissed her safe place claim against Trollhaugen Ski Resort, more properly known as Trollhaugen, Inc. (Trollhaugen), and American Home Assurance Company (American Home). *See Mair v. Trollhaugen Ski Resort,* 2005 WI App 116, 283 Wis. 2d 722, 699 N.W.2d 624.

¶ 2. Mair contends that the circuit court erred in applying the ten-year statute of repose in Wis. Stat. § 893.89 (2003–04)[1] to bar her claim brought under the safe place statute, Wis. Stat. § 101.11. We disagree and conclude that ten years after a structure is substantially completed, § 893.89 bars safe place claims resulting from injuries caused by structural defects, as opposed to safe place claims resulting from injuries caused by unsafe conditions associated with the structure. Because the undisputed material facts demonstrate that Mair's fall was caused by alleged defects in the

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

location, depth, and slope of the floor drain that existed since the building's construction, her injury was caused by an alleged structural defect and not an unsafe condition associated with the structure. Accordingly, we affirm the decision of the court of appeals.

I

¶ 3. On January 23, 2001, Mair fractured her right femur in a women's bathroom located in the chalet of the ski resort. She entered the bathroom wearing her ski boots and walked across the floor to the cubicle. After exiting the cubicle, she stepped into a floor drain with her right foot, lost her footing and fell. The fall fractured her right thigh.

¶ 4. The bathroom where Mair fell was constructed in 1976 with a concrete floor. Neither the configuration of the bathroom nor the floor drain has been modified since the original construction. The recessed area around the drain is an oval shape, not more than 24 to 30 inches in length the long direction. The drain cover itself was depressed approximately half an inch from the bottom of the slope and at a maximum depth of two inches below the plane of the bathroom floor. Routine daily maintenance measures, including inspection, mopping, and cleaning of the bathroom floors, are taken to ensure the safety of the bathroom. The floor is not highly polished, waxed or slippery, and boot scrapers are provided outside the bathroom door.

¶ 5. Mair commenced this suit on December 16, 2002, alleging common-law negligence and violation of the safe place statute, Wis. Stat. § 101.11, against

138

Trollhaugen and its insurer, American Home.[2] She based her negligence claim against Trollhaugen on an assertion that her injury "was proximately caused by the negligence of employees and/or agents of Trollhaugen Ski Resort." She also claimed Trollhaugen was liable under the safe place statute, Wis. Stat. § 101.11, for its failure "to design, construct, or maintain the premises in as safe a condition as the nature thereof reasonably permitted."

¶ 6. On December 3, 2003, Trollhaugen moved for summary judgment, arguing that Mair's claims were time-barred by the builder's statute of repose, Wis. Stat. § 893.89. This statute reads, in pertinent part, as follows:

> [N]o cause of action may accrue and no action may be commenced ... against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages ... for any injury to the person ... arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property. ...

Wis. Stat. § 893.89(2). For purposes of the statute, "exposure period" means the "10 years immediately following the date of substantial completion of the improvement to real property." Wis. Stat. § 893.89(1).

---

[2] Dalco Enterprises, Inc. (Dalco) and its insurer were also named as defendants. In 1992, employees of Dalco resealed the bathroom floor at issue with a clear epoxy sealant containing nonslip grit. Because the coating was still in good condition at the time of Mair's fall and because Mair's liability expert did not find the sealant to be a contributing factor to her fall, Mair stipulated to dismiss Dalco and its insurer.

¶ 7. In her response brief to Trollhaugen's summary judgment motion, Mair conceded that Wis. Stat. § 893.89 barred her common-law negligence claim and summary judgment was appropriate on that claim. However, she disputed that § 893.89 also barred her safe place claim. Mair also conceded that the safe place statute did not create a distinct cause of action under Wisconsin law, but argued that the safe place statute imposed an ongoing duty to modify or make an existing structure safe if it was unsafe at the time of construction. The circuit court agreed that the safe place statute does not create a distinct cause of action, but simply establishes a higher standard of care than an ordinary negligence claim. It found, therefore, that if a common-law negligence claim is time-barred, any negligence claim as modified by the safe place statute would also be barred.

¶ 8. The circuit court also noted that safe place cases distinguish between property conditions causing injury that are "structural defects" and those that are "unsafe conditions associated with the structure." The court determined that if Mair's cause of action arose from an unsafe condition associated with the structure, it might not fall within the statute of repose and there could potentially be liability against the property owner.

¶ 9. To determine whether the property condition at issue was a structural defect or an unsafe condition associated with the structure, the court considered the deposition of Larry Seiberlich (Seiberlich), Mair's liability expert. Seiberlich opined to a reasonable degree of professional certainty that the design, location, and construction of the recessed floor drain caused or contributed to Mair's injury. He also stated that the loca-

tion, depth, and slope of the recess did not offend any Wisconsin building codes, only what he considered industry standards.

¶ 10. Seiberlich was also asked whether he believed that the bathroom lighting or the color of the bathroom walls or floor may have caused or contributed to the fall. He stated that the lighting was appropriate and that the red color of the bathroom wall "may have been" a factor in Mair's fall, but he could not state such an opinion to a reasonable degree of professional certainty.

¶ 11. Mair's answers to Trollhaugen's interrogatories also spoke to a structural defect rather than an unsafe condition associated with the property as the cause for her fall. For example, in response to her basis for the allegations of negligence, Mair responded as follows:[3]

> My fall resulted from the placement of an unmarked recessed drain in the exit path from the toilet cubicle in the bathroom facility. This was of sufficient depth to result in my unfooting and injury. Nothing had been done to highlight this hazard either directly or in the form of any warning signs at entry or inside. This incident occurred in a facility supposedly designed for the use of visitors to the center and the placement of the recess in a high traffic area which shows a lack of appreciation of foreseeable risk in the provision of such facilities. The depth of the depression is sufficient to be a major contributor to a fall but insufficient to draw

---

[3] Mair's answer was in response to a question asking her to state the manner in which she alleges employees or agents of Dalco were negligent; however, her answer references safe place duties and the placement of the drain, which indicate the answer was intended to address negligence on the part of Trollhaugen, not Dalco.

141

immediate attention to itself without some form of visual enhancement or hazard warning sign, neither of which were present. The failure of Dalco Enterprises Inc. [sic] their Agents or Employees to highlight the above hazard resulted in my jeopardy and injury. They have failed to provide a facility for public use which one could regard as a Safe Place, either from a statutory point of view or in my own reality.

Furthermore, at Mair's deposition, counsel for Trollhaugen asked her, "[i]s it fair to say that there was nothing about the condition of the floor other than the dip that caused or contributed to cause your fall?" To this, Mair answered, "[a]s far as I was concerned, it was the dip that made me fall."

¶ 12. The circuit court concluded that the defects in the location, depth, and slope of the floor drain, which Seiberlich opined were the cause of Mair's accident, were structural defects. Although defects in the lighting or paint color or a lack of warning signs could be considered unsafe conditions associated with the structure, Mair did not present sufficient evidence necessary to survive summary judgment that these were potential causes of her fall. Because the undisputed material facts demonstrated that the sole potential cause of Mair's fall was an alleged structural defect, the court granted Trollhaugen's motion for summary judgment and dismissed Mair's complaint in a written decision entered on March 9, 2004.

¶ 13. The court of appeals affirmed. *Mair*, 283 Wis. 2d 722. It first concluded that the safe place statute covers construction and the ongoing duty to keep the premises safe by repairing and maintaining the premises. *Id.*, ¶¶ 7, 11. The builder's statute of repose, however, bars claims made after ten years for an injury arising out of a defect in design or construction of

a building. *Id.,* ¶ 8. Therefore, the court of appeals concluded that "to the extent Mair's safe place claim is based on defective construction of the bathroom floor, the claim is barred by the ten-year statute of repose." *Id.,* ¶ 10. The court of appeals also determined that to the extent Mair's injuries arose out of a breach of the statutory duty to repair or maintain the premises, thus leading to an unsafe condition associated with the structure, Trollhaugen did not have actual or constructive notice of the defect. *Id.,* ¶¶ 13–14. Mair appeals from this decision.

II

¶ 14. This case comes before us on summary judgment. "We review a circuit court's grant of summary judgment independently, applying the same methodology as the circuit court." *Smaxwell v. Bayard,* 2004 WI 101, ¶ 12, 274 Wis. 2d 278, 682 N.W.2d 923 (citing *Town of Delafield v. Winkelman,* 2004 WI 17, ¶ 15, 269 Wis. 2d 109, 675 N.W.2d 470). Pursuant to Wis. Stat. § 802.08(2), summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "We view the summary judgment materials in the light most favorable to the nonmoving party." *Smaxwell,* 274 Wis. 2d 278, ¶ 12 (citing *Torgerson v. Journal/Sentinel, Inc.,* 210 Wis. 2d 524, 537, 563 N.W.2d 472 (1997)). "Summary judgment should not be granted, 'unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained.' " *Id.* (quoting *Goelz v. City of Milwaukee,* 10 Wis. 2d 491, 495, 103 N.W.2d 551

(1960)). "Where the material facts are not disputed, the court is presented solely with a question of law, subject to de novo review." *Id.* (citing *Winkelman,* 269 Wis. 2d 109, ¶ 16).

¶ 15. Furthermore, this case presents an issue of statutory interpretation, which is a question of law we review de novo. *Fuchsgruber v. Custom Accessories, Inc.,* 2001 WI 81, ¶ 10, 244 Wis. 2d 758, 628 N.W.2d 833. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). Statutory language is also "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46.

III

¶ 16. We first address whether Mair's safe place claim is barred by Wis. Stat. § 893.89. Mair argues that it is not, as the statute of repose is intended to apply only to common-law negligence claims. The statute of repose, Mair argues, is restricted to negligent acts at the time of construction, while the safe place law is not limited to the initial construction but imposes an ongoing duty to furnish a safe place. Essentially, it is Mair's position that if Trollhaugen built a bathroom floor that was unsafe at the time of construction in 1976, the safe place statute places an ongoing duty on Trollhaugen to make the structure safe at all times thereafter.

¶ 17. Conversely, Trollhaugen argues that Mair's claim is barred by Wis. Stat. § 893.89, as the statute of repose applies to safe place claims based on structural defects but not to claims based on unsafe conditions associated with the structure. Further, Trollhaugen argues that Mair has not presented evidence sufficient to overcome summary judgment on her safe place claim, as her claim was based solely on an alleged structural defect.

¶ 18. Under a plain reading of the statutory sections at issue and in light of our prior safe place case law, we agree with Trollhaugen that Wis. Stat. § 893.89 bars safe place claims resulting from injuries caused by structural defects beginning ten years after a structure is substantially completed. Furthermore, in light of the pleadings, depositions, and answers to interrogatories presented to the circuit court at summary judgment, Mair's claim is based on an alleged structural defect and occurred more than ten years after the building was substantially completed. Therefore, the circuit court properly rendered summary judgment to Trollhaugen, and we affirm the decision of the court of appeals.

¶ 19. Wisconsin's safe place statute, Wis. Stat. § 101.11, is a negligence statute that imposes a heightened duty on employers and owners of places of employment and public buildings to construct, repair, or maintain buildings safely. *Barry v. Employers Mut. Cas. Co.,* 2001 WI 101, ¶¶ 18–19, 245 Wis. 2d 560, 630 N.W.2d 517. Section 101.11(1) reads, in pertinent part, as follows:

> (1) Every employer . . . shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety

devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

For purposes of this statute, "safe" means "such freedom from danger to the life, health, safety or welfare of employees or frequenters, or the public . . . as the nature of the employment, place of employment, or public building, will reasonably permit." Wis. Stat. § 101.01(13). Furthermore, safe "does not mean completely free of any hazards. . . . Just because a place could be made more safe, it does not necessarily follow that an employer or owner has breached the duty of care established by Wis. Stat. § 101.11(1)." *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.,* 2004 WI 98, ¶ 10, 274 Wis. 2d 162, 682 N.W.2d 857 (citations omitted).

¶ 20. The safe place statute does not create a distinct cause of action, but provides a higher duty than the duty of ordinary care regarding certain acts by employers and owners of places of employment or public buildings. *Barry,* 245 Wis. 2d 560, ¶ 18. The statute imposes three specific duties on these employers and owners: "to construct, to repair, and to maintain a safe place of employment or public building." *Id.,* ¶ 20.

¶ 21. Despite the statute's focus on the duties imposed upon employers and owners, our case law has focused on the unsafe conditions that arise from a

146

breach of one of the three specific duties. *Id.*, ¶ 24. The two categories of unsafe property conditions relevant here are: (1) " 'structural defects' " and " 'unsafe conditions associated with the structure.' "[4] *Id.*, ¶ 21 (quoting Howard H. Boyle, Jr., *Wisconsin Safe-Place Law Revised* 139 (1980)).

¶ 22. A structural defect arises " 'by reason of the materials used in construction or from improper layout or construction.' . . . [A] structural defect is a hazardous condition inherent in the structure by reason of its design or construction." *Id.*, ¶ 28 (internal citation omitted). Furthermore, a structural defect arises from a breach of the duty to construct a safe building. *Id.* There is no notice requirement for a structural defect; a property owner is "liable for injuries caused by structural defects regardless of whether he or she knew or should have known that the defect existed." *Id.*, ¶ 22.

¶ 23. Alternatively, an unsafe condition associated with the structure arises from "the failure to keep an originally safe structure in proper repair or properly maintained." *Id.*, ¶ 27. These "conditions" arise from a breach of the statutory duty to repair or maintain the property and generally involve the structure falling into disrepair or not being maintained in a safe manner. *Id.*, ¶ 25. The duty of the owner to repair or maintain the

---

[4] Mair claims that the distinction between "structural defects" and "unsafe conditions associated with the structure" is not applicable to this case as the distinction has been recognized only as it pertains to whether a property owner need have notice of a defect before being held liable for an unsafe condition. We do not read our case law in such a restrictive light and conclude that the categories of unsafe property conditions are a useful distinction for purposes of our analysis here.

public building or place of employment arises when the owner has actual or constructive notice of the defect. *Id.,* ¶ 23.

██

¶ 24. In light of these categories of unsafe property conditions, we turn to the facts of this case. After reviewing the record before us, Mair's single theory of liability is that the negligent design and placement of the floor drain and the slope of the surrounding floor caused her to fall and break her leg. To support this theory, Mair had an expert witness, Seiberlich, testify to a reasonable degree of professional certainty that the location, depth, and slope of the recessed floor drain caused or contributed to Mair's injury. In Seiberlich's words:

> I believe that the location of the drain was inappropriate. And from a design perspective, we make all attempts as architects to locate depressed drains out of pathways. I believe whoever located the drain made a mistake in that location and should have located it in a non-pathway area. I believe that the drain was too deep, it violated normative and industry standards, and the slope was extensive beyond what the industry standards dictate. The installation then and the design I believe were contributing factors.

These allegations all relate to a hazardous property condition that is a structural defect rather than an unsafe condition associated with the structure. That is, there is no allegation that Trollhaugen allowed the bathroom floor to fall into disrepair or did not maintain it in a safe manner. Based on the evidence presented to the circuit court at the summary judgment stage, there is no dispute that the floor and drain were in their original condition since the initial construction of the

ski resort approximately 30 years ago, and Mair's allegations are based on an alleged failure to safely construct the bathroom.

¶ 25. Mair argues that the failure to modify the drain to comply with modern safety standards creates an unsafe condition associated with the structure. However, as noted, an unsafe condition associated with the structure involves a structure falling out of repair or not being maintained in a safe manner. That is, the employer or owner essentially breaches his or her statutory duty to repair or maintain the property. *Barry,* 245 Wis. 2d 560, ¶ 25. Because the design and placement of the floor drain and the condition of the surrounding floor have nothing to do with a failure to repair or maintain the property, they can be classified only as structural defects rather than unsafe conditions associated with the structure.

¶ 26. Mair also alleges that the bathroom lighting, the color of the bathroom walls or floor or the lack of warning signs or markers may have caused her injury. While Seiberlich testified that the color of the room may have been a contributing factor in causing Mair's fall, he was unable to give his opinion to a reasonable degree of professional certainty on that issue. Although defects in the lighting or paint color or a lack of warning signs could be considered unsafe conditions associated with the structure, Mair did not present evidence sufficient to escape summary judgment that such a condition contributed to her fall. Because the undisputed material facts demonstrate that Mair's injury was caused by alleged defects in the location, depth, and slope of the floor drain that existed since the building's construction, her injury was caused by an alleged structural defect and not an unsafe condition associated with the property.

¶ 27. We now turn to an analysis of the builder's statute of repose, Wis. Stat. § 893.89, which sets forth "the time period during which an action for injury resulting from improvements to real property must be brought." *Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, ¶ 13, 283 Wis. 2d 1, 698 N.W.2d 794. The statute begins to run when the improvement is substantially completed and prohibits a cause of action from accruing after the ten-year exposure period ends. Wis. Stat. § 893.89. It is a statute of repose rather than a statute of limitation because it "provides that a cause of action must be commenced within a specified amount of time after the defendant's action which allegedly led to injury, regardless of whether the plaintiff has discovered the injury or wrongdoing." *Tomczak v. Bailey*, 218 Wis. 2d 245, 252, 578 N.W.2d 166 (1998). Causes of action within the scope of the statute include "any deficiency or defect *in the design*, land surveying, planning, supervision or observation of construction of, *the construction of*, or the furnishing of materials for, the improvement to real property." Wis. Stat. § 893.89 (emphasis added).

¶ 28. There are several exceptions to the statute of repose, enumerated in Wis. Stat. § 893.89(4). Safe place claims brought under Wis. Stat. § 101.11, however, are not specifically excepted. This omission combined with § 893.89(1)'s inclusion of deficiencies or defects in the design or construction of improvements to real property indicate to us that the builder's statute of repose was intended to apply to at least certain safe place claims, namely those concerning a breach of the duty to construct a safe place of employment or a public building. Again, a breach of the duty to construct a safe structure correlates to structural defects.

¶ 29. There is, however, an exception for claims brought against "[a]n owner or occupier of real property for damages resulting from negligence in the *maintenance,* operation or inspection of an improvement to real property." Wis. Stat. § 893.89(4)(c) (emphasis added). Under the safe place statute, a failure to "maintain" correlates to an unsafe condition associated with the structure, and thus allegations of such defects do not fall under the purview of the builder's statute of repose. Thus, from a plain reading of the statute, we can conclude that § 893.89 bars safe place claims resulting from injuries caused by structural defects, but not by unsafe conditions associated with the structure, beginning ten years after a structure is substantially completed.

¶ 30. In this case, Mair alleged in her complaint that Trollhaugen failed to maintain the premises in as safe a condition as its nature permitted. However, at the summary judgment stage, Mair could not back such a claim up, as she did not present any genuine issues of material fact demonstrating that an unsafe condition associated with property caused her fall. Furthermore, she did not allege in the complaint that Trollhaugen negligently operated or inspected the bathroom floor. Under Wis. Stat. § 893.89(4)(c), such claims are sufficient to escape the scope of the statute of repose. In essence, Mair's claim related to a failure to design and construct a safe building, and therefore, it is barred under the statute of repose.

¶ 31. Our interpretation of the interplay between Wis. Stat. §§ 893.89 and 101.11 is also consistent with the legislative history of Wis. Stat. § 893.89. The original version of the statute, Wis. Stat. § 893.155 (1973–74), protected those involved in the " 'design,

planning, supervision of construction or construction of such improvement to real property.' " *Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 388, 225 N.W.2d 454 (1975) (quoting Wis. Stat. § 893.155 (1973–74)). The statute did not apply to those classes ignored by the statute, such as materialmen, and it specifically excluded the "owners and occupants" of the buildings. *Id.* The *Kallas* court held that the statute was unconstitutional as written, as "the legislative classification that gives special protection to the protected group is unreasonable." *Id.* at 391. While the court recognized that there are public policy reasons that may justify a limitations period for those in the construction business, it concluded "there appears no reason why only a very restricted class of those thus occupied is protected by the statute." *Id.* In other words, where the cause of injury would be the same in any particular case, a limited grant of immunity would serve only to shift liability from those who were most likely the cause of the defect to other groups who did not qualify for protection under the statute.

¶ 32. The legislature subsequently passed a revised version of the statute that added land surveyors and material providers, but not owners and occupiers, to the list of protected groups. § 2, ch. 323, Laws of 1975; *Funk v. Wollin Silo & Equip., Inc.*, 148 Wis. 2d 59, 64–66, 435 N.W.2d 244 (1989). The revision also contained a statement of intent explaining that persons involved in the planning, design, and construction of improvements to real estate lacked sufficient control over the property after the project's completion to determine the need for maintenance or repairs and did not have the power to effect these repairs if needed. § 1, ch. 335, Laws of 1975. On review, the *Funk* court rejected the legislature's use of "control over the prop-

erty" as a rational way to determine which groups qualified for protection under the statute, stating that continuing control was irrelevant where a statute was intended to prevent liability for errors or omissions in the construction of an improvement to real property. *Id.* at 67. Because the court determined that the revisions reduced the under-inclusiveness of the statute but did not eliminate it completely and that the statutory means were not substantially or rationally related to the stated end, it held that the revised version of the statute was still in violation of equal protection. *Id.* at 76–77.

¶ 33. Following this decision, the legislature passed 1993 Wis. Act 309, which amended the statute a second time. *Kohn,* 283 Wis. 2d 1, ¶ 61. The legislature cited a concern that "groups were reluctant to participate in state-sponsored construction projects because of the limited period of protection offered by state-purchased insurance coverage and the potential for unlimited tort liability past the end of such coverage." *Id.* The new revision provided protection for owners and occupiers to the extent they were involved in the original design and construction of the improvement, but not for negligence in maintenance or repair of the improvement once it was completed. *Id.,* ¶ 66. In *Kohn,* we held that this class distinction was rationally related to the purpose of the revised statute, protecting those involved in the design and construction of improvements to real property, and that the statute did not violate equal protection. *Id.,* ¶ 81.

¶ 34. Application of Wis. Stat. § 893.89 to safe place claims based on a structural defect is consistent with the intent of the legislature in passing revised versions of the statute of repose. The previous versions of the statute were declared unconstitutional, in large

part, because they did not include protection for owners and occupiers. After the first two versions of the statute were struck down, the legislature was forced to choose between forgoing the statute of repose altogether or including owners and occupiers within its scope. By asking this court to apply the statute of repose as if the revisions had not been made, Mair is asking the court to ignore its own previous decisions regarding the statute's constitutionality and the decision of the legislature that it was preferable as a matter of public policy to limit causes of action against owners and occupiers than to discard the statute of repose for members of the construction industry.

¶ 35. While we have concerns that this construction of the statutes effectively limits the duty of owners and occupiers to bring existing buildings in line with modern concepts of safety, this limitation of Wis. Stat. § 101.11 is necessary for the statute of repose to serve its intended purpose. The legislature determined that there is a public interest in terminating liability for structural defects after a specified time in addition to an interest in providing safe buildings. If Wis. Stat. § 893.89 terminates liability for members of the construction industry ten years after a structure is completed but does not terminate liability for property owners, an injured party will simply bring a claim against the owner and liability will shift between groups rather than being eliminated. Applying § 893.89 to safe place claims for structural defects, however, will terminate liability for these defects without affecting an owner's duty to repair and maintain a structure in a condition as safe as reasonably possible given any inherent defects in its structure.

154

## IV

¶ 36. For the first time on this appeal, Mair seeks review of the constitutionality of Wis. Stat. § 893.89. Mair attempts to characterize the court of appeals' decision as creating a new classification under § 893.89. However, the classification about which Mair is complaining is one which this court has already addressed and upheld. *See Kohn,* 283 Wis. 2d 1, ¶ 80 (holding that class distinctions in § 893.89 between owners and occupiers and other classes "rationally serve[d] the legitimate purpose of limiting the long-term liability of those who are involved in the improvement of real property[,]" and did not violate the equal protection clauses of the state or federal constitutions). We therefore need not address the constitutionality of § 893.89 again here today.

## V

¶ 37. In sum, we conclude that ten years after a structure is substantially completed, § 893.89 bars safe place claims resulting from injuries caused by structural defects, as opposed to safe place claims resulting from injuries caused by unsafe conditions associated with the structure. Because the undisputed material facts demonstrate that Mair's fall was caused by alleged defects in the location, depth, and slope of the floor drain that existed since the building's construction, her injury was caused by an alleged structural defect and not an unsafe condition associated with the structure. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.