SEIDL, J.
*793 ¶1 John Soletski appeals a grant of summary judgment in favor of Krueger International, Inc., and its insurers, Federal Insurance Company and National Union *210 Fire Insurance Company of Pittsburgh, PA.[1] In this appeal relating to his personal injury action, Soletski contends the circuit court erred by determining that: (1) his safe-place claim was barred by the builder's statute of repose; (2) his common-law negligence and negligent entrustment claims were barred by the general rule that a principal employer is not liable in tort for injuries sustained by an independent contractor's employee while that employee is performing the contracted work; and *794 (3) Krueger's claims for taxable costs were not forfeited despite the fact that the judgment was not perfected within thirty days of its entry.
¶2 We conclude the statutory exposure period set forth in the builder's statute of repose had expired by the time Soletski was injured by a structural defect, and no exception to the statute of repose applies. Therefore, Soletski's safe-place claim is barred. We also determine that Soletski's negligence claims are barred by the independent contractor rule as set forth in Wagner v. Continental Casualty Co. , 143 Wis.2d 379, 421 N.W.2d 835 (1988). Finally, we conclude that when a party timely files a proposed bill of costs within the thirty-day time limit set forth by WIS. STAT. § 806.06(4) (2015-16),[2] that party's right to recover costs is not forfeited simply because the circuit court does not resolve an objection to the bill of costs within thirty days. Accordingly, we affirm.
BACKGROUND
¶3 Krueger owns and operates a furniture production facility in Green Bay that was built in 1972. In 2012, Krueger hired Spectrum Maintenance Services, LLC (Spectrum), a professional cleaning company, to clean its facility.
¶4 On September 9, 2012, two of Spectrum's employees, Soletski and Clifford Couillard, were cleaning the facility's ceiling. To do so, Soletski and Couillard were positioned on the platform of a scissor lift. Krueger owned this particular lift, but it allowed Spectrum to use the lift in exchange for a credit on Krueger's final bill. Couillard operated the lift by *795 raising it so that he and Soletski could clean an approximately ten-foot area of the ceiling. After they were done with this area, Couillard lowered the platform, moved the lift forward, and the two repeated their cleaning process. At some point, Couillard unknowingly moved the lift onto an unmarked ramp and then raised the platform. As a result of the platform being raised on top of an incline, the lift overturned and Soletski suffered serious injuries.
¶5 Soletski subsequently made a successful worker's compensation claim against Spectrum. He also sued Krueger, asserting claims of common-law negligence, negligent entrustment, and violation of Wisconsin's safe-place statute, WIS. STAT. § 101.11. Soletski claimed, in relevant part, that the ramp where the accident occurred was unsafe due to a lack of both warning markings and guardrails, and that Krueger had failed to properly warn, train and supervise Spectrum employees on the use of the scissor lift.
¶6 Krueger moved for summary judgment, arguing that Wisconsin's builder's statute of repose, WIS. STAT. § 893.89, barred all of Soletski's claims relating to *211 structural defects at Krueger's facility. Further, Krueger argued that Soletski's remaining claims were barred by Wagner . The circuit court agreed with Krueger and granted its summary judgment motion.
¶7 On September 6, 2017, the circuit court entered its judgment and dismissed Soletski's action "with prejudice and statutory costs." Krueger filed proposed bills of costs within thirty days of this entry of judgment.[3] Soletski then filed objections, and the circuit court clerk attempted to schedule a hearing on *796 the disputed costs. However, by the time the clerk contacted Soletski to schedule a hearing, thirty days had passed since the entry of judgment. Consequently, Soletski argued that a hearing was unnecessary because Krueger had forfeited its rights to recover costs by failing to timely perfect the judgment under WIS. STAT. § 806.06(4).
¶8 The circuit court rejected Soletski's argument, and held a hearing on the disputed costs on November 17, 2017, nearly three months after the judgment was entered. The court concluded that Krueger had timely filed its proposed costs within thirty days of entry of judgment, as required by WIS. STAT. § 806.06(4), and therefore awarded Krueger its requested costs. Soletski now appeals.
DISCUSSION
¶9 We review a grant of summary judgment independently, applying the same methodology as the circuit court. Mair v. Trollhaugen Ski Resort , 2006 WI 61, ¶ 14, 291 Wis.2d 132, 715 N.W.2d 598. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). The purpose of summary judgment is to avoid trials when there is nothing to try. Tews v. NHI, LLC , 2010 WI 137, ¶ 42, 330 Wis.2d 389, 793 N.W.2d 860. In reviewing the parties' submissions, we draw all reasonable factual inferences in the light most favorable to the nonmoving party.
*797 Pum v. Wisconsin Physicians Serv. Ins. Corp. , 2007 WI App 10, ¶ 6, 298 Wis.2d 497, 727 N.W.2d 346. Whether an inference is reasonable and whether more than one inference may be drawn are questions of law. Id.
¶10 This case also presents an issue of statutory interpretation, which is a question of law that we review de novo. Mair , 291 Wis.2d 132, ¶ 15, 715 N.W.2d 598. Statutory interpretation begins with the language of the statute; if the language's meaning is plain, we ordinarily stop the inquiry. Id. The language of a statute is not interpreted in isolation, however; it must be read in the context in which it is used, in relation to the language of surrounding or closely related statutes in a reasonable manner, so as to avoid absurd or unreasonable results. Id.
I. Safe-place claim
¶11 Soletski first argues the circuit court erred in determining that the builder's statute of repose barred his claim that Krueger violated the safe-place statute, WIS. STAT. § 101.11. The safe-place statute is a negligence statute that imposes, as relevant here, a heightened duty on owners of public buildings to construct, repair and maintain their buildings safely. See Mair , 291 Wis.2d 132, ¶ 19, 715 N.W.2d 598. The statute does not address negligent acts; instead, it addresses unsafe *212 property conditions.[4] See *798 Megal v. Green Bay Area Visitor & Convention Bureau, Inc. , 2004 WI 98, ¶¶ 9-11, 274 Wis.2d 162, 682 N.W.2d 857.
¶12 There are two types of property conditions for which the owner of a public building can be held liable under the safe-place statute: (1) structural defects; or (2) unsafe conditions associated with a structure. Rosario v. Acuity & Oliver Adjustment Co. , 2007 WI App 194, ¶ 15, 304 Wis.2d 713, 738 N.W.2d 608. A structural defect refers to a hazardous property condition inherent in a structure by reason of design or construction. Id. , ¶ 16. In contrast, an unsafe condition associated with a structure refers to a property feature that was safely designed and constructed but, due to improper repair or maintenance, has become dangerous over time. Mair , 291 Wis.2d 132, ¶ 23, 715 N.W.2d 598.
¶13 For purposes of the builder's statute of repose, the distinction between these two property conditions is critical because the statute "was intended to apply" to claims relating to structural defects, but not to claims relating to unsafe conditions relating to a structure. Id. , ¶ 28. This distinction reflects that the two types of property conditions result from breaches of two separate statutory duties. Rosario , 304 Wis.2d 713, ¶ 17, 738 N.W.2d 608. Specifically, a structural defect is created by a "breach of the statutory duty to safely construct,"
*799 whereas an unsafe condition associated with a structure is created by a "breach of the statutory duty to repair or maintain." Id.
¶14 A safe-place act claim that relates to a structural defect is barred by the builder's statute of repose when the claim is brought after the statutory exposure period.[5] Mair , 291 Wis.2d 132, ¶ 29, 715 N.W.2d 598. Here, Soletski acknowledges the statute of repose would bar his claims if his injuries were caused "solely by [Krueger's] failure to mark its ramp when it was designed and installed[.]" Nonetheless, Soletski argues the circuit court erred by concluding that the statute of repose barred his claims related to the unmarked and unguarded ramp because: (1) the ramp was an unsafe condition associated with the structure, not a structural defect; (2) Krueger had a duty to inspect its facility and warn Spectrum about the ramp's existence; (3) the statute of repose's maintenance exception, WIS. STAT. § 893.89(4)(c), applies; and (4) his negligence claims are not limited to unsafe property conditions. We discuss each argument in turn.
¶15 Soletski first argues that the condition of the ramp changed what would otherwise be a structural defect into an unsafe condition associated with *800 the structure. In support, he relies on our supreme *213 court's statement in Mair that "defects in the lighting or paint color" could be considered unsafe conditions associated with a structure. Mair , 291 Wis.2d 132, ¶ 26, 715 N.W.2d 598. Further, he points to Couillard's deposition testimony that when he looked down at the ramp, he saw only a dirty floor, not any warning paint that would indicate he had driven onto an incline.
¶16 This argument fails because although Soletski points to evidence that the floor was dirty, he does not point to any evidence that the condition of the ramp obscured any marking on the ramp or that, if the ramp was clean, he would have been able to distinguish between the ramp and a flat surface. Again, an unsafe condition associated with a structure arises from "a failure to keep an originally safe structure in proper repair or properly maintained." Id. , ¶ 23. As there is no indication that the ramp ever had any markings or coloration that would have indicated its presence, we cannot conclude that its allegedly dirty condition created an unsafe condition associated with the structure. Instead, and at best, Soletski has alleged that the ramp was defectively designed and constructed in 1972. This type of "defect" is, by definition, structural.
¶17 Second, Soletski argues Krueger's failure to inspect its facility and warn Spectrum about the ramp's existence-either explicitly or by marking the ramp with paint-allows his safe-place claim to escape the bar imposed by the builder's statute of repose. We are not persuaded. In essence, this argument presupposes that the ramp, by design, constituted a hazard and that Krueger had a duty to discover and take proactive steps to mitigate that hazard. As noted by *801 Krueger in its briefs, we have already considered and rejected such an argument in Rosario .
¶18 In Rosario , the plaintiff tripped on a three-inch step while exiting an office building and broke her foot. Rosario , 304 Wis.2d 713, ¶ 2, 738 N.W.2d 608. She sued, and argued that the builder's statute of repose did not bar her claim because the building owner should have either noticed and corrected the unsafe step or posted signs warning visitors about the step. Id. , ¶ 23. We ultimately rejected this argument, agreeing with the circuit court's conclusion that this argument was an attempt to "elude the bar imposed by the Statute of Repose." Id. , ¶¶ 29-30.
¶19 Like the Rosario court, we reject the contention that the bar imposed by the builder's statute of repose may be avoided by arguing that a hazard such as an uneven floor or inclined surface should be discovered by a property owner and either fixed or marked. If this logic were followed, a duty to inspect and warn would render the statutory exposure period meaningless because a plaintiff could always allege that a defendant should have inspected its premises and either fixed or warned of any alleged defect. Rosario prohibits such a result.
¶20 Third, Soletski contends the builder's statute of repose's maintenance exception, WIS. STAT. § 893.89(4)(c), applies. This exception allows claims that would otherwise be barred by the statute of repose to proceed against "[a]n owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property." Sec. 893.89(4)(c). Soletski argues this exception applies for two reasons: (1) he was generally involved in the maintenance of *802 Krueger's facility; and (2) Krueger negligently maintained the ramp by allowing it to become dirty.
¶21 We do not agree that the maintenance exception is applicable to the facts of this case. To begin, Soletski's argument *214 that he meets the exception because he was involved in general maintenance at Krueger's facility fails under Hocking v. City of Dodgeville , 2010 WI 59, 326 Wis.2d 155, 785 N.W.2d 398. In Hocking , homeowners argued the City of Dodgeville had negligently planned and designed certain roadways. Id. , ¶ 50. The homeowners acknowledged that, absent an applicable exception, the builder's statute of repose would bar their claims. Id. , ¶ 22. Consequently, they argued the City's continuous maintenance of the roadways was enough to invoke the maintenance exception. Id. , ¶ 46.
¶22 Our supreme court rejected this argument. Id. , ¶ 50. The court held the builder's statute of repose's maintenance exception is not triggered by the mere act of properly maintaining an improvement to real property; instead, an improvement to real property must have been negligently maintained to trigger the exception. Id. , ¶¶ 47-50. The court reasoned that to hold an entity's engaging in routine, proper maintenance was enough to invoke the exception "would create an exception that swallows the rule." Id. , ¶ 47. Thus, the mere fact that Soletski was engaged in general maintenance at Krueger's facility does not trigger the statute of repose's maintenance exception.
¶23 As to Soletski's argument that Krueger's maintenance of the ramp itself was negligent, we agree with Krueger that Soletski had forfeited this argument by not raising it in the circuit court. See *803 State Farm Mut. Auto. Ins. Co. v. Hunt , 2014 WI App 115, ¶ 32, 358 Wis.2d 379, 856 N.W.2d 633. In his reply brief, Soletski acknowledges that he did not argue that Krueger negligently maintained the ramp, but he then notes that he "did contend below that uniform coloration concealed the ramp, citing testimony that dirtiness rendered floor and ramp the same color." Relying on the fact that he presented evidence of the floor's dirtiness (albeit without him arguing that Krueger's maintenance of the area was negligent), Soletski argues we should not apply the forfeiture rule because "the only prohibition is against raising new issues[,]" not new arguments.
¶24 We reject this argument because it is contrary to well-established precedent. "[C]ountless [cases] have reaffirmed that the forfeiture rule focuses on whether particular arguments have been preserved, not on whether general issues were raised before the circuit court." Townsend v. Massey , 2011 WI App 160, ¶ 25, 338 Wis.2d 114, 808 N.W.2d 155. Moreover, the reason for applying the forfeiture rule-to promote fair and efficient litigation-supports its use here. See id. , ¶ 26. One rationale for the rule is that if a particular argument is not raised before a circuit court, an opposing party cannot develop a record as it pertains to that argument, and we cannot conduct a meaningful review. See Arsand v. City of Franklin , 83 Wis.2d 40, 57, 264 N.W.2d 579 (1978). Here, Soletski's failure to argue that Krueger was negligent by failing to keep the ramp and surrounding area clean gave Krueger no opportunity to develop a record or response to that argument before the circuit court. As a result, it is appropriate to apply the forfeiture rule.
¶25 Ultimately, Soletski's safe-place claim rests on the notion that the unmarked and unguarded ramp *804 created a hazardous condition at Krueger's facility. However, Soletski presents no evidence that the ramp had been improperly maintained or repaired since its construction in 1972. Therefore, the ramp is, by definition, a structural defect. Because the statutory exposure period set forth in the builder's statute of repose had expired before Soletski was injured, and no exception to the *215 statute of repose applies, Soletski's safe-place claim is barred.
¶26 Soletski also makes several arguments as to why the builder's statute of repose does not bar his claims of "independent negligence," because Krueger had duties "related to safe operation of the equipment, not [just] the condition of the premises." In short, Soletski contends that "separate negligence alone suffices to defeat application of" the statute of repose. We agree that the statute of repose does not bar all of Soletski's claims. However, we disagree with Soletski's conclusion that because the statute of repose does not pose a complete bar to all of his claims, "[r]eversal is required." Instead, like the circuit court, we analyze Soletski's common-law negligence and negligent entrustment claims under the applicable independent contractor rule found in Wagner .
II. Common-law negligence and negligent entrustment
¶27 Soletski argues the circuit court erred by determining that his negligence claims were barred under the independent contractor rule as set forth in Wagner . This rule provides that a principal employer is generally not liable in tort for injuries sustained by an independent contractor's employee while he or she is *805 performing the contracted work.[6] Wagner , 143 Wis.2d at 400-01, 421 N.W.2d 835. However, there are two exceptions to this general rule: (1) an independent contractor's employee may bring suit against a principal employer for injuries caused by the principal employer's affirmative act of negligence; and (2) a principal employer may be held liable for injuries sustained by an independent contractor's employee while the employee is engaged in an extrahazardous activity. Tatera v. FMC Corp. , 2010 WI 90, ¶ 18, 328 Wis.2d 320, 786 N.W.2d 810. Soletski does not argue that he was engaged in an extrahazardous activity, and so we focus solely on the first exception.
¶28 The relevant inquiry under the first exception is whether the principal employer has committed an act of commission, as opposed to an act of omission. Id. , ¶ 22. The majority of Soletski's negligence claims-i.e., Krueger's failures to train, investigate, remove obstacles, warn or supervise-are, by definition, acts of omission. See id. , ¶ 29. ("By definition, the failure to warn, the failure to investigate or test, and the failure to instruct are omissions, not affirmative acts."). Accordingly, we may dispose of them "with dispatch" and need not address the merits of these claims any further. See id.
¶29 However, Soletski does point to one affirmative act Krueger performed-the act of supplying Spectrum the scissor lift from which Soletski ultimately *806 fell. But as Soletski acknowledges, his own expert concluded that "the lift was not defective." Because the lift itself was not defective, Soletski cannot show that Krueger committed an affirmative act of negligence by providing the lift to Spectrum. See id. , ¶ 30.
¶30 Soletski raises two additional arguments as to why the independent contractor rule from Wagner should not bar his claims. First, he argues that the owner's manual for the scissor lift gave rise to duties that Krueger, as the owner of the lift, could not delegate to Spectrum. Specifically, he contends "the lift's Operation and Safety Manual imposed duties on *216 [Krueger], including ensuring that operators are qualified and inspecting for and warning of hazards." But, Soletski cites no legal authority to support the existence of an "owner's manual exception" to the Wagner independent contractor rule. Moreover, he does not explain why a principal employer could not delegate a duty created by an owner's manual to an independent contractor when it provides a piece of equipment to the contractor. We decline to address this undeveloped argument further. See State v. Pettit , 171 Wis.2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).
¶31 Second, Soletski argues the safe-place statute creates a heightened duty of care that renders the independent contractor rule in Wagner inapplicable. We need not address this argument because it presupposes that Soletski's safe-place claim is not barred by the builder's statute of repose. As discussed above, this notion is incorrect.
¶32 In short, the circuit court properly determined that Soletski's common-law negligence and negligent entrustment claims were barred by the rule that *807 a principal employer is generally not liable in tort for injuries sustained by an independent contractor's employee while he or she is performing the contracted work. See Wagner , 143 Wis.2d at 400-01, 421 N.W.2d 835. Soletski has not identified any applicable exception to this rule. We therefore conclude that Krueger was entitled to summary judgment as a matter of law on Soletski's negligence and negligent entrustment claims. As discussed above, Krueger was also entitled to summary judgment on Soletski's safe-place claim. Consequently, the circuit court did not err by dismissing Soletski's case in its entirety.
III. Taxable costs
¶33 Finally, Soletski argues the circuit court erred by awarding Krueger its requested costs more than thirty days after entry of judgment. WISCONSIN STAT. § 806.06(4) provides that a prevailing "party shall perfect the judgment within 30 days of entry or forfeit the right to recover costs." A judgment is perfected "by the taxation of costs and the insertion of the amount thereof in the judgment." Sec. 806.06(1)(c). Here, the parties agree that Krueger timely requested its costs. They also agree that due to Soletski's prompt objection and the necessity for a hearing on the disputed costs, the judgment was not ultimately perfected until more than thirty days after the entry of judgment.
¶34 Relying on Hartman v. Winnebago County , 216 Wis.2d 419, 574 N.W.2d 222 (1998), and Purdy v. Cap Gemini America, Inc. , 2001 WI App 270, 248 Wis.2d 804, 637 N.W.2d 763, Soletski argues the thirty-day time limit for perfection of costs is an absolute deadline that may be overcome only by the grant of a stay pending appeal or by stipulation of the *808 parties. Accordingly, because Krueger neither sought nor secured a stay or stipulation, Soletski argues Krueger forfeited its right to recover costs.
¶35 We are not persuaded that Hartman and Purdy dictate that the thirty-day time limit for perfection set forth in WIS. STAT. § 806.06(4) may be overcome only by a stay or stipulation. Rather, we agree with Krueger that a prevailing party's timely filing of its bill of costs within thirty days of the entry of judgment satisfies the time limit set forth in § 806.06(4).
¶36 In Hartman , our supreme court held that attorneys' fees must be taxed and inserted in the judgment within thirty days of the entry of judgment under WIS. STAT. § 806.06(4). Hartman , 216 Wis.2d 419, ¶ 30, 574 N.W.2d 222. And the supreme *217 court also acknowledged that this thirty-day time limit could be postponed by stipulation of the parties or by the prevailing party moving for a stay pending appeal. Id. , ¶ 37. But the critical reason the Hartman court found the request for costs in that case untimely was that no request for attorneys' fees was made until nearly two years after the entry of judgment. Id. Similarly, in Purdy , we held that a claim for attorneys' fees brought more than three years after a grant of summary judgment was untimely under § 806.06(4). See Purdy , 248 Wis. 2d 804, ¶¶ 1-4, 637 N.W.2d 763. Thus, both Hartman and Purdy are readily distinguishable from the present case: both addressed a request for costs initially filed outside the thirty-day deadline set forth in § 806.06(4). That was not the case here.
¶37 To hold that WIS. STAT. § 806.06(4) requires a prevailing party not only to file its request for costs within thirty days of the entry of judgment, but to actually effect the taxation of those costs, would lead to absurd results. Wisconsin courts are directed to read *809 statutes sensibly and restrain the words of a statute if a literal construction of the words would lead to absurdities. See Jankowski v. Milwaukee Cty. , 104 Wis.2d 431, 438, 312 N.W.2d 45 (1981). The power to tax and insert costs into a judgment lies solely with the clerks of circuit courts. See WIS. STAT. § 814.10(1). Accordingly, the most that a prevailing party can do to perfect a judgment is request that a clerk effect taxation. As the ultimate control regarding perfection of the judgment lies outside a prevailing party's hands, it would be absurd to construe § 806.06(4) literally so as to require prevailing parties to perfect taxation of their own costs within the thirty-day period. Rather, the statute can only reasonably be read to require a prevailing party to submit its bill of costs to the clerk of circuit court within the thirty-day time limit.
¶38 Moreover, we conclude that interpreting the thirty-day time limit set forth in WIS. STAT. § 806.06(4) to be satisfied by a timely filing of a prevailing party's proposed bill of costs is necessary in order to harmonize § 806.06(4) with WIS. STAT. § 814.10(3). Section 814.10(3) grants a clerk of circuit court the power to "adjourn" the taxation of costs when a party objects to a proposed bill of costs. Because both §§ 806.06(4) and 814.10(3) deal with the taxation of costs, we must read the two statutes in a harmonious fashion. See CED Props., LLC v. City of Oshkosh , 2018 WI 24, ¶ 24, 380 Wis.2d 399, 909 N.W.2d 136. If we were to require a prevailing party to seek a stay or stipulation every time there was an objection to its timely filed proposed bill of costs, a clerk's adjournment power would be rendered meaningless. We cannot interpret § 806.06(4) in a manner that would lead to such an inharmonious result.
*810 ¶39 In sum, we conclude that when a party timely files its proposed bill of costs within the thirty-day time limit set forth by WIS. STAT. § 806.06(4), its right to recover costs is not forfeited simply because the costs are objected to and the circuit court does not resolve that objection within thirty days. Instead, a circuit court clerk may exercise the adjournment powers granted by WIS. STAT. § 814.10(3) to effectively toll the thirty-day time limit for a reasonable time, until the circuit court can conduct a hearing to resolve the dispute. As that is precisely what happened in this case, we affirm the circuit court's award of costs to Krueger.
By the Court. -Judgment affirmed.

In this opinion, the term "Krueger" refers both to the principal defendant, Krueger International, Inc., and, when in relation to arguments and litigation conducted by all defendants-respondents (including Krueger International, Inc.'s insurers named as defendants in this action), to all defendants-respondents.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

On September 13, 2017, an identical judgment was entered by the circuit court, without explanation to the parties. However, on appeal the parties do not dispute that September 6, 2017, was the effective date for the entry of judgment and that Krueger timely filed its bills of costs within thirty days of this date.

We note that throughout his briefs, Soletski conflates issues regarding his safe-place claim-i.e., his claim related to the condition of the unmarked and unguarded ramp-and his claims regarding alleged acts of negligence. Therefore, we have exercised our authority to structure and frame the issues independently of the manner in which the parties have presented them. See State v. Waste Mgmt. of Wis., Inc. , 81 Wis.2d 555, 564, 261 N.W.2d 147 (1978). To the extent that we have not expressly mentioned some of Soletski's arguments, those arguments are deemed rejected. See id.

On April 3, 2018, our state legislature amended Wis. Stat. § 893.89(1) to reduce the statutory exposure period from ten to seven years. See 2017 Wis. Act 235, § 27. Here, it is undisputed that the ramp at issue was constructed in 1972 and remained unchanged until Soletski's injury in 2012, forty years later. Thus, regardless of whether we considered the version of § 893.89 in effect at the time of Soletski's injury or the current version, the applicable statutory exposure period had long since elapsed before Soletski's injury.

In regard to this independent contractor rule, the term "principal employer" is used interchangeably with the terms "owner" or "general contractor." Tatera v. FMC Corp. , 2010 WI 90, ¶ 2 n.4, 328 Wis.2d 320, 786 N.W.2d 810. Regardless, the parties do not dispute that Krueger was a principal employer.