COURT OF APPEALS
DECISION
DATED AND FILED

March 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1520**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV586

IN COURT OF APPEALS
DISTRICT III

KARLA ALSGOOD,

   PLAINTIFF-APPELLANT,

UNITED HEALTHCARE INSURANCE COMPANY D/B/A AARP MEDICARE SUPPLEMENT PLANS AND/OR MEDICARE SOLUTIONS, THOMAS E. PRICE, M.D., SECRETARY OF DEPARTMENT OF HEALTH & HUMAN SERVICES AND SUTTER HEALTH,

   INVOLUNTARY-PLAINTIFFS,

 V.

WESTERN LANES, INC. AND MIDWEST FAMILY MUTUAL INSURANCE COMPANY,

   DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Brown County: BEAU LIEGEOIS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Karla Alsgood appeals the summary judgment dismissal of her safe-place and negligence claims against Western Lanes, Inc., the owner of Ashwaubenon Bowling Alley, and its insurer, Midwest Family Mutual Insurance Company (together, Western Lanes).  Alsgood's claims arise out of injuries she sustained when she fell on a bowling alley step during a tournament.

¶2     For two reasons, we conclude that the circuit court properly dismissed Alsgood's safe-place claim that Western Lanes failed to warn her of the step.  *See* WIS. STAT. § 101.11 (2019-20).[1]  First, Alsgood characterizes this claim as relating to an unsafe condition associated with the property; however, the claim ultimately rests on the presence of a structural defect causing injury, and it is therefore barred by the builder's statute of repose.  *See* WIS. STAT. § 893.89 (2015-16).[2]  Second, Alsgood did not present evidence showing that Western Lanes had actual or constructive notice of any unsafe condition.  As to Alsgood's negligence claim, we conclude that dismissal was proper because Alsgood did not present evidence from which a jury could reasonably conclude that Western Lanes' negligent operation of the premises caused her injury.  Accordingly, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] In 2018, our legislature amended WIS. STAT. § 893.89 to require that structural defect claims be brought within seven, not ten, years of the substantial completion of the improvement to real property.  *See* 2017 Wis. Act 235, § 27.  The parties agree that Alsgood's suit is governed by the 2015-16 version of § 893.89.

## BACKGROUND

¶3     For purposes of this appeal, the following facts are undisputed. Alsgood was injured during a bowling competition at the Ashwaubenon Bowling Alley. The general area where the injury occurred consists of a pedestrian walkway of approximately five feet, a "settee" or bowlers' area, and bowling lanes. The settee, located between the pedestrian walkway and the bowling lanes, is where bowlers sit while they are waiting to bowl. The settee is divided into two sections: the lower settee, next to the bowling lanes, and the upper settee, which lies between the pedestrian walkway and the lower settee. A single six-inch step with black nosing separates the upper and lower settees. The pedestrian walkway and the upper settee are on the same (higher) elevation; the lower settee and bowling lanes are on the lower elevation. The pedestrian walkway is carpeted, and the entire settee area is covered in smooth, tiled vinyl. The flooring in the upper and lower settees is of the same tile pattern.

¶4     On the day of her injury, Alsgood had been competing in the tournament, had finished bowling, and was watching other bowlers. As a spectator, she was sitting in the bottom middle portion of temporary bleachers that Western Lanes had erected in the pedestrian walkway for use during the competition. She stood up from the bleachers, walked straight toward the bowling lanes into the upper settee area, and turned right. She continued walking along the upper settee, parallel to the black nosing on the step, until her left foot made a misstep or "airstep" on the step separating the upper and lower settees. Alsgood fell, struck her knee against a metal post, and injured her knee.

¶5     Alsgood brought negligence and safe-place claims against Western Lanes. *See* WIS. STAT. § 101.11(1) ("Every employer and every owner of a place

3

of employment or public building … shall so construct, repair or maintain such place of employment or public building as to render the same safe.").  As pertinent to this appeal, Alsgood alleged that her fall was due to the change in elevation between the upper and lower settees; the lack of warning signs or other demarcation warning of the change in elevation; the increased and misdirected foot traffic; and the same tile pattern in both the upper and lower settee areas.

¶6     Western Lanes moved for summary judgment, arguing that the bowling alley was last remodeled in 2003 and, accordingly, that any theories of recovery based on the settee's alleged design defects were barred by the builder's statute of repose.  *See* WIS. STAT. § 893.89(1), (2) (2015-16) (claims resulting from injuries caused by structural defects are barred unless brought within ten years after the structure is substantially completed).  Western Lanes further argued that, as a matter of law, the evidence did not support Alsgood's additional theories of liability.  The circuit court agreed and granted Western Lanes' motion for summary judgment, dismissing Alsgood's suit.  Alsgood appeals.  We will discuss additional facts where pertinent.

## DISCUSSION

¶7     Summary judgment is appropriate where the pleadings and evidence submitted demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2).  Our review is de novo.  ***Bank of N.Y. Mellon v. Klomsten***, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364.  Likewise, statutory interpretation presents a question of law that we decide de novo.  ***Soletski v. Krueger Int'l, Inc.***, 2019 WI App 7, ¶10, 385 Wis. 2d 787, 924 N.W.2d 207.

¶8     Alsgood does not dispute that the builder's statute of repose bars her negligence and safe-place claims to the extent they allege structural (i.e., design and construction) defects in the location where she fell.  *See* WIS. STAT. § 893.89(2) (2015-16) (statute of repose applicable to structural defect claims); WIS. STAT. § 101.11(1) (employers and owners have a duty to construct places of employment and public buildings so as to render them safe); ***Mair v. Trollhaugen Ski Resort***, 2006 WI 61, ¶22, 291 Wis. 2d 132, 715 N.W.2d 598 (a structural defect is "a hazardous condition inherent in the structure by reason of its design or construction" (citation omitted)).  Alsgood argues, however, that she has a viable safe-place claim based on Western Lanes' failure to properly repair or maintain the premises.  *See* § 101.11(1) (employers and owners have a duty to repair and maintain places of employment and public buildings so as to render them safe); ***Mair***, 291 Wis. 2d 132, ¶23 (the breach of the duty to repair or maintain the property arises where an employer or owner "fail[s] to keep an originally safe structure in proper repair or properly maintained" (internal quotation marks and citation omitted)).  Alsgood further argues that she has a viable common-law negligence claim based on Western Lanes' failure to properly operate its facility so as to regulate crowd size in the settee area during the tournament.  We reject these arguments.

*I.  Safe-Place Claim*

¶9     Our case law "generally recognize[s] three categories of unsafe property conditions," including the two conditions potentially relevant to this appeal: "structural defects" and "unsafe conditions associated with the structure." ***Barry v. Employers Mut. Cas. Co.***, 2001 WI 101, ¶¶21, 25, 245 Wis. 2d 560, 630 N.W.2d 517.  As stated, Alsgood concedes that any structural defect claim is barred by the statute of repose, and she instead focuses on alleged unsafe

conditions associated with the structure arising out of Western Lanes' breach of its statutory duty to repair or maintain the premises. *See id.*, ¶¶20-21, 25. "Conditions 'associated with the structure' are those which involve the structure (or the materials with which it is composed) becoming out of repair or not being maintained in a safe manner." *Id.*, ¶25 (citation omitted).

¶10 Alsgood argues that "[i]nadequate warning" or "lack of warning signs" about the step between the upper and lower settee "can be considered an unsafe condition under the safe place statute."[3] Alsgood is correct that in *Mair*, our supreme court noted that "lack of warning signs could be considered [an] unsafe condition[] associated with the structure." *See Mair*, 291 Wis. 2d 132, ¶26. The court, however, determined that there was no evidence that the lack of warning signs contributed to the plaintiff's injury. *Id.* Instead, the undisputed evidence showed that the injury was caused by structural defects: the location, depth, and slope of the floor drain where the plaintiff fell. *Id.*

¶11 The following year, in *Rosario v. Acuity*, 2007 WI App 194, ¶¶29-30, 304 Wis. 2d 713, 738 N.W.2d 608, this court considered whether the plaintiff, who fell on a step, had an actionable safe-place claim based on an unsafe condition. The plaintiff argued that the owner's failure to warn about the step was an unsafe condition. *Id.*, ¶14. We rejected this argument, concluding that, "[b]ecause the undisputed facts clearly demonstrate that [the plaintiff's] injuries

---

[3] In her brief-in-chief, Alsgood appears to argue that "the alleged unsafe condition resulting in [her] injuries was the uncontrolled foot traffic during the … tournament," coupled with the improper placement of bleachers that, allegedly, steered pedestrian traffic into the settee area. In her reply brief, however, she clarifies that her safe-place claim is based solely on the alleged failure to use adequate warnings. Thus, we do not address any argument relating to a safe-place claim based on increased foot traffic.

were caused by the defective structural design of the front step, her claim is subject to the statute of repose and any consequences of its application." *Id.*, ¶19. We also quoted with approval the reasoning of the circuit court:

> [The plaintiff] endeavors to elude the bar imposed by the Statute of Repose by arguing that [the design of the step is] an unsafe condition because defendant should have warned of the step. This appears … to be intrinsically circular logic. To accept it would be to undo the Statue of Repose. It would be tantamount to saying that an unsafe condition is created by a failure to warn of a design defect barred by the Statute of Repose.

*Id.*, ¶¶29-30.

¶12    We are persuaded that the circumstances of ***Rosario*** are nearly identical to those here and preclude a valid safe-place claim based on the failure to warn of design defects in the step. Alsgood's expert lists "lack of warnings" as one of many factors causing an unsafe condition, but there is no specific evidence about how warning signs could or would have prevented the fall. Moreover, the expert's discussion about "warnings" is general and relates primarily to small steps having "poor" "visual cues" that make it hard to discern differences in elevation (i.e., a design defect). If we set aside all expert findings relating to design and construction defects, we agree with Western Lanes that there is no expert conclusion that Alsgood's fall was caused, even in part, by lack of warning signs. There is no other evidence, such as Alsgood's testimony, tending to show that warning signs could have prevented her fall.[4]

---

[4] In fact, Alsgood's testimony tends to show that Alsgood knew that a step was there. The step runs the length of the settee, and Alsgood had been bowling at the bowling alley for two days of competition. Thus, the reasonable inference is that Alsgood was aware of the general layout of the settee area, including the presence of the step.

¶13    Therefore, Alsgood's argument, if accepted, would ultimately create an end-run around the statute of repose.  That is, to the extent Alsgood's fall was caused by "the absence of a clearly marked step edge," "the poor contrast between walking surface levels," a "busy floor pattern," or other alleged design defects, Alsgood cannot elude the statute of repose by arguing that Western Lanes created an unsafe condition by failing to warn her about such defects.  *See id.*, ¶¶29-30; *see also* **Soletski**, 385 Wis. 2d 787, ¶19 ("Like the **Rosario** court, we reject the contention that the bar imposed by the builder's statute of repose may be avoided by arguing that a hazard such as an uneven floor or inclined surface should be discovered by a property owner and … marked.  If this logic were followed, a duty to … warn would render the statutory exposure period meaningless because a plaintiff could always allege that a defendant should have inspected its premises and … warned of any alleged defect.").

¶14    In addition, to bring a safe-place claim based on unsafe conditions, a plaintiff must show that the owner or employer had actual or constructive notice of the condition.  **Barry**, 245 Wis. 2d 560, ¶¶22-23.  Alsgood does not argue that Western Lanes actually knew that the settee area was unsafe and, in fact, concedes that there have been no documented injuries in the area since its remodel in 2003.  Furthermore, in implying that Western Lanes had constructive notice of unsafe conditions, Alsgood simply relies on her expert's broad characterizations of the injury locale as "a significant fall hazard" and "a well-known fall hazard."  There is no further explanation or evidence showing that Western Lanes should have known that the step was hazardous, and aside from referencing these statements, Alsgood does not explain why Western Lanes should be imputed with the knowledge of any unsafe condition.

8

¶15     Based on this record, Alsgood has not shown that the lack of warning signs caused her injury or met the notice requirement for a claim based on unsafe conditions.     We conclude that the circuit court properly dismissed Alsgood's safe-place claim.

## II. Negligence Claim

¶16     As stated, Alsgood further argues that Western Lanes breached its duty of ordinary care in regulating crowd size and foot traffic in the settee area. *See Alvarado v. Sersch*, 2003 WI 55, ¶14, 262 Wis. 2d 74, 662 N.W.2d 350 ("Every person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care."). Alsgood contends that the temporary bleachers obstructed the pedestrian walkway, that such condition increased crowding in the pedestrian walkway and directed foot traffic to the settee area, and that the resulting high foot traffic in the settee area made the area unsafe for pedestrians. Thus, Alsgood appears to argue that the settee, even if ordinarily safe, became confusing or difficult to navigate given the large crowd, causing Alsgood to make a misstep or "airstep" while walking along the upper settee. Alsgood contends that, in dismissing this claim, the trial court erroneously determined questions of fact on summary judgment. According to Alsgood, the question of whether Western Lanes' negligent operation of the bowling alley caused her injuries is for the jury.

¶17     Summary judgment on a negligence claim is uncommon "because the court must be able to say that no properly instructed, reasonable jury could find, based on the facts presented, that [the defendant] failed to exercise ordinary care." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶2, 241 Wis. 2d 804, 623 N.W.2d 751 (internal quotation marks and citation omitted).     Thus,

9

typically—but not always—the determination of negligence requires fact-finding. *Id.* At the same time, summary judgment may be appropriate in a negligence action where there is no *genuine* dispute of material fact. *Id.*, ¶21. "A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party." *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 2018 WI 112, ¶80, 384 Wis. 2d 669, 920 N.W.2d 767.

¶18     We conclude that summary judgment is appropriate here because there is no genuine dispute as to whether Western Lanes' negligent operation of the bowling alley on the day of the tournament caused Alsgood's injury. Alsgood argues that the bleachers' position prevented spectators from easily navigating around the bleachers and continuing along the pedestrian walkway to exits at either end. Thus, Alsgood asserts, the bleachers created a "reasonable and foreseeable" pathway into the settee area. On this point, Alsgood relies on the opinion of her expert that "[i]t is very likely that the placement of the moveable bleacher directed additional pedestrian traffic into the walkway where the accident took place."

¶19     Alsgood, however, presented no evidence from which a fact-finder could reasonably conclude that the bleachers redirected foot traffic to such an extent that the settee area became unsafely crowded. The allegation is not that all or even most foot traffic was directed to the settee because the pedestrian walkway was wholly or significantly blocked. In fact, a photograph of the bleachers at the time of the accident shows people—several of whom appear to be walking—on all four sides of the bleachers, which indicates that the pedestrian walkway was *not* significantly blocked. Alsgood presented no evidence as to how much more crowded (if at all) the settee was than usual, whether the settee was designed to

accommodate the level of crowding that did occur on that day, or whether the bleachers actually played a role in creating any crowding that existed. Thus, even if a fact-finder could infer from the evidence that the bleachers created a "reasonable and foreseeable" pathway onto the settee, a fact-finder could not reasonably infer that the number of people on the settee at the time of Alsgood's fall was either unsafe or, in fact, due to the placement of the bleachers.

¶20　Moreover, Alsgood's deposition testimony was that, once she entered the settee area, she could not see where she was going because she "was right behind" her friend, whom she was following. Alsgood stated that she did not slow down to put space between herself and her friend because there were "a bunch of people around us," but she also stated that she was able to slow down and that doing so would have allowed her to better see the floor. There is no evidence that the people around her caused Alsgood to misstep (either because she could not see ahead of her or for some other reason), and Alsgood herself could not explain why she fell.[5] Thus, it is mere speculation to assume that, even if the bleachers caused crowding on the settee, this crowding caused Alsgood's fall. Accordingly, on this record, we conclude that the circuit court properly dismissed Alsgood's negligence claim in addition to her safe-place claim.

　　　　*By the Court.*—Judgment affirmed.

　　　　This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] Alsgood's complaint alleged that her fall was primarily due to her slipping on rosin or another hazardous, slippery liquid. By the time of her deposition, however, Alsgood did not testify that she slipped and fell, and, in fact, did not attribute her fall to any specific cause.