COURT OF APPEALS
DECISION
DATED AND FILED

June 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP2197**

STATE OF WISCONSIN

Cir. Ct. No.  2022CV318

IN COURT OF APPEALS
DISTRICT IV

TAJUDEEN LASISI,

  PLAINTIFF-APPELLANT,

 V.

MT. OLYMPUS ENTERPRISES, INC.,

  DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge. *Affirmed*.

Before Graham, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Tajudeen Lasisi appeals a judgment entered against him that dismissed his common law negligence and safe place statute claims with prejudice after the circuit court granted summary judgment in favor of Mt. Olympus Enterprises, Inc. ("Mt. Olympus").[1]  We affirm.

## BACKGROUND

¶2      The following facts are undisputed for the purposes of summary judgment, except when specifically attributed to a party.

¶3      Mt. Olympus operates a water and theme park in the Wisconsin Dells that includes the Hades 360 roller coaster ride ("Hades").  Hades is a traditional wood and steel roller coaster in that the roller coaster train in which passengers ride is pulled up a lift hill and released.  After its release, the train freely coasts through the ride, speeding up in the valleys and slowing down on the hills, without assistance from any acceleration mechanism.  The train can reach speeds of up to 70 miles per hour and the ride includes a 140-foot drop and a 360-degree barrel roll where the train and its passengers travel upside down for a short period of time.

¶4      At all times that Hades is in operation, two ride attendants operate and monitor Hades.  One attendant opens the passenger gate to allow entry of two passengers into each row of the train.  Riders are restrained with lap bars, seat belts, and headrests.  Both attendants go to each row and check that the lap bars

---

[1] The correct legal name for the entity sued by Lasisi in this action is Mt. Olympus Enterprises, Inc. and we amend the caption accordingly.

and seat belts are secure for each rider. The train is then dispatched by both attendants, and the ride operates automatically.

¶5 Hades is equipped with a ready brake that automatically slows the train as it returns to the passenger station, station brakes that bring the train to a complete stop in the station for passenger loading and unloading, and an emergency brake which is triggered by an emergency stop button on a ride control panel that is monitored by a ride attendant. Mt. Olympus asserts that because there are no acceleration mechanisms to propel the train forward during the ride, an application of brakes to the train during the ride would prevent the train from having enough energy to return to the station and cause it to come to a stop in a valley somewhere on the track.

¶6 Every morning before the park opens to the public, including on the morning of the incident at issue here, staff at Mt. Olympus conduct a 90-minute inspection of Hades' track, station, and train, and complete a test run of the train with weighted dummies, generating daily inspection logs for the train and separate inspection logs for the track and station. According to the relevant daily inspection logs, Mt. Olympus staff reported that Hades was in good condition and operating normally on the morning of the incident and throughout the day.

¶7 Hades also underwent performance testing in 2017 and in July 2019, approximately one month before the incident, by an engineering firm which concluded that Hades was operating "within normal industry standards." The train in use during the incident here was installed in 2018, and there were additional design modifications and upgrades made to the track at that time.

¶8 On August 25, 2019, Lasisi rode Hades with his daughter. Lasisi had ridden a roller coaster once before, approximately twenty-five years earlier.

3

In the passenger waiting area prior to Lasisi entering the ride, there was a sign that stated that guests who have neck or back problems should not ride. Lasisi had prior chronic back problems. Lasisi alleges that Hades made several abrupt stops during the ride that injured his neck. Lasisi did not report any issues with the ride or any injury he sustained to the ride attendants or to other staff at Mt. Olympus until several days after the incident. After the ride, Lasisi spent another hour at the water park with his family, had dinner, and drove for several hours to get home. Lasisi sought medical treatment several days later.

¶9      In August 2022, Lasisi sued Mt. Olympus for negligence and for violating WIS. STAT. § 101.11 (2023-24), known as the safe place statute.[2] Lasisi alleges that Hades made several abrupt stops, at least one of which occurred midway through the ride and injured his neck, which Lasisi testified may have occurred when Hades was upside down. After discovery, Mt. Olympus moved for summary judgment, arguing in part that Lasisi could not meet his burden of proving that Mt. Olympus breached the standard of care for roller coaster operators or violated the safe place statute.

¶10     Mt. Olympus submitted evidence to support its summary judgment motion, including, in pertinent part: expert averments on the physics of roller coasters and Hades specifically; approximately one year of maintenance and inspection records for Hades; and lay and expert averments on the maintenance and condition of Hades at the time of Lasisi's alleged injury. Lasisi relied solely on his deposition testimony to oppose Mt. Olympus's motion. During the

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

deposition, he testified that Hades stopped abruptly several times and, in the process, injured his neck.

¶11    In a written decision, the circuit court granted summary judgment in favor of Mt. Olympus.  The court, adopting the statement of facts submitted by Mt. Olympus, concluded that Lasisi could not meet his burden of proof as to the elements of his negligence or safe place claims because he provided no evidence to rebut Mt. Olympus's evidence and he failed to identify the duty of care Mt. Olympus owed to him or how Mt. Olympus breached that duty of care or violated the safe place statute.  As a result, the court dismissed Lasisi's complaint with prejudice.  Lasisi appeals.[3]

## STANDARD OF REVIEW

¶12    We review a grant of summary judgment independently, using the same methodology as the circuit court.  ***Hardy v. Hoefferle***, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  Under this methodology, we engage in a three-step process, moving only to the next step if the appropriate party has satisfied the burden of the preceding step.  ***Helland v. Kurtis A. Froedtert Mem'l***

---

[3] Lasisi also appeals the circuit court's denial of his motion for reconsideration.  Lasisi supported the motion with an affidavit, which Lasisi submitted for the first time with the reconsideration motion, and which contained averments from Lasisi's daughter regarding her personal knowledge from riding Hades with Lasisi.  The court denied Lasisi's motion, concluding that Lasisi failed to meet the standard for newly discovered evidence or show that the court made a manifest error of law or fact.  On appeal, Lasisi fails to develop an argument, or respond to Mt. Olympus's argument, that the court did not erroneously exercise its discretion in denying his reconsideration motion.  Therefore, we deem this argument conceded by Lasisi and address it no further.  *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in a reply brief to an argument made in a response brief may be taken as concession); *see also **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address undeveloped arguments or arguments unsupported by legal authority).

*Lutheran Hosp.*, 229 Wis. 2d 751, 755-56, 601 N.W.2d 318 (Ct. App. 1999) (*citing **Grams v. Boss***, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980) (*overruled on other grounds by **Beidel v. Sideline Software, Inc.***, 2013 WI 56, 348 Wis. 2d 360, 842 N.W.2d 240)). We first examine whether the pleadings set forth a claim for relief as well as a material issue of fact. *Id.*, at 756. Next, we examine the moving party's affidavits and other proofs to determine whether they establish a prima facie case for summary judgment. *Id.* (citation omitted). "A moving party states a prima facie case for summary judgment by showing a defense that would defeat the claim." *Id.* (emphasis omitted).

¶13 If the movant has made such a showing, we then examine the affidavits and other proof of the opposing party to discern "whether there 'exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial.'" ***Central Corp. v. Research Products Corp.***, 2004 WI 76, ¶18, 272 Wis. 2d 561, 681 N.W.2d 178 (citation omitted); *see **Helland***, 229 Wis. 2d at 756. To defeat summary judgment at this third step, "[i]t is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony which is not based upon personal knowledge." ***Helland***, 229 Wis. 2d at 756. Although the facts in the record are viewed in the light most favorable to the nonmoving party, ***North Highland, Inc. v. Jefferson Machine & Tool Inc.***, 2017 WI 75, ¶21, 377 Wis. 2d 496, 898 N.W.2d 741, the nonmoving party "may not rest upon the mere allegations or denials of the pleadings … [and] must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party." WIS. STAT. § 802.08(3); *see **Helland***, 229 Wis. 2d at 764. Accordingly, summary judgment shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WIS. STAT. § 802.08(2).

## DISCUSSION

¶14 Here, there is no argument that Lasisi failed to meet the first summary judgment step, or that Mt. Olympus failed to meet the second summary judgment step. At issue is the third step in our summary judgment analysis— whether Lasisi has shown that genuine issues of material facts exist, or that differing inferences from undisputed facts can be drawn, necessitating a trial. Lasisi argues that the circuit court erroneously concluded that Lasisi failed to meet this step, thereby improperly awarding summary judgment in Mt. Olympus's favor. We reject this argument for the reasons we discuss.

¶15 Prior to our discussion and for context, we set forth the elements of Lasisi's claims under common law negligence principles and the safe place statute.

1. Negligence Principles and the Safe Place Statute

¶16 In his complaint, Lasisi alleges that an abrupt stop midway through the Hades ride injured him, and he asserts a common law negligence claim and a safe place statute violation, as set forth in WIS. STAT. § 101.11. To prove common law negligence, a plaintiff must establish four elements: (1) the defendant had a standard of care, or a duty, owed to the plaintiff; (2) the defendant breached that duty; (3) the breach of that duty caused the plaintiff's injury; and (4) the injury resulted in actual loss or damage. ***Gritzner v. Michael R.***, 2000 WI 68, ¶19, 235 Wis. 2d 781, 611 N.W.2d 906. If the plaintiff cannot prove one of the elements, then the plaintiff's claim will fail. *See **Lambrecht v. Estate of Kaczmarcyzk***, 2001

7

WI 25, ¶28, 241 Wis. 2d 804, 623 N.W.2d 751 (identifying that the case turned on whether or not conduct constituting a negligent breach occurred), *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 531-32, 247 N.W.2d 132 (1976) (identifying that the case turned on whether or not a duty existed); *see also* WIS JI-CIVIL 1500 (instructing a jury to consider whether someone's negligence was a substantial factor in producing the injury).

¶17    Under common law negligence principles, "every person is subject to a duty to exercise ordinary care in all of [their] activities." *Gritzner*, 235 Wis. 2d 781, ¶20. What constitutes ordinary care in a particular situation or case may vary according to law or statute. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶22, 274 Wis. 2d 162, 682 N.W.2d 857; *see also id.*, ¶25 ("A person is negligent if the person, without intending to cause harm, either acts affirmatively or fails to act in a way that a reasonable person would recognize as creating an unreasonable risk of injury."). Whether the defendant's act, or failure to act, satisfies the defendant's duty of care owed to the plaintiff depends on whether the defendant exercised a "degree of care as would be exercised by a reasonable person under the circumstances." *Gritzner*, 235 Wis. 2d 781, ¶24 (citation omitted).

¶18    The safe place statute addresses unsafe conditions or defects associated with a building or structure instead of negligent acts. *See* WIS. STAT. § 101.11(1)[4]; *see also Soletski v. Krueger Int'l, Inc.*, 2019 WI App 7, ¶11 & n.4,

---

[4] WISCONSIN STAT. § 101.11(1) states:

(continued)

385 Wis. 2d 787, 924 N.W.2d 207. In pertinent part, the statute imposes a "heightened duty" on owners of public buildings or structures to construct, repair and maintain them in a safe manner, and an ongoing duty to keep the premises safe. WIS. STAT. § 101.11(1); *see also* **Soletski**, 385 Wis. 2d 787, ¶11 & n.4; **Estate of Lorbiecki v. Pabst Brewing Co.**, 2026 WI 12, ¶17, 419 Wis. 2d 755, 33 N.W.3d 800. These duties extend to not just employees, but to "frequenters," defined as "every person … who may go in or be in a public building under circumstances which render such person other than a trespasser." WIS. STAT. § 101.01(6); *see also* **Lorbiecki**, 419 Wis. 2d at ¶17. Although safe place claims are referred to as a type of negligence claim, the focus of the inquiry is on the property condition which is alleged to have caused the injury, rather than on a negligent act. **Soletski**, 419 Wis. 2d 755, ¶11.

### 2. Lasisi Does Not Show a Material Factual Dispute

¶19 On appeal, Lasisi argues that the circuit court erred in granting summary judgment in Mt. Olympus's favor because the court disregarded Lasisi's legal arguments and the disputed facts set forth in Lasisi's summary judgment materials. We conclude that summary judgment in Mt. Olympus's favor was proper.

---

Every employer shall furnish employment which shall be safe for … frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

¶20    In regard to Lasisi's assertion that the circuit court improperly disregarded his legal arguments, Lasisi does not detail the specific arguments in his summary judgment materials that were improperly disregarded or include record cites in support of his assertions. Therefore, we will not further address this argument because it is undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court may decline to address arguments that are undeveloped).

¶21    In regard to the facts that Lasisi asserts the circuit court ignored, Lasisi's appellate briefing includes an itemized list of "disputed and undisputed" facts that "were available to the circuit court," and he asserts that the court "disregarded contrary evidence." However, Lasisi does not specify which facts are disputed or undisputed, or develop a legal argument about why these facts are material and render summary judgment in Mt. Olympus's favor improper.[5] Lasisi appears to center his argument that summary judgment was improper around his deposition testimony. As noted, in his deposition, Lasisi testified that during the

---

[5] The "disputed and undisputed" facts referenced by Lasisi include: Hades was traveling at "highway speed" between 50 and 60 miles-per-hour; Lasisi did not report the incident to Mt. Olympus because he did not want to alarm his daughter and he did not think he was badly injured until he began the drive home from the park; Mt. Olympus's safety director averred that Hades travels at a top speed of 70 miles-per-hour, that it performs a 360-degree barrel roll where the train goes upside down, that Hades' breaks are automatically applied at the end of the ride to slow the train down and to stop the train at the station but there is also an emergency stop button on a control panel monitored by an attendant. Lasisi does not develop any legal argument explicitly, nor do we discern an implicit legal argument, that these facts are material to his claims or render summary judgment in Mt. Olympus's favor improper. *See Pettit*, 171 Wis. 2d at 646-47 (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped). Indeed, allegations of factual disputes between the parties is not enough to defeat a properly supported motion for summary judgment. *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991). Rather, the nonmoving party must point to genuine issues of material fact. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Therefore, we reject Lasisi's assertion that these facts were improperly ignored by the circuit court in rendering its summary judgment decision in Mt. Olympus's favor.

course of the ride, Hades made several abrupt stops, with the most impactful stop occurring midway through the ride when Lasisi "fe[lt] like my head had just slammed on something, that my brain is slammed on my skull. And I went numb for a while." Lasisi further testified that he experienced pain in his head and neck, and that one or two abrupt stops followed that had a similar impact on Lasisi. However, Lasisi fails to develop an argument explaining how these facts undercut the substantial evidence presented in Mt. Olympus's summary judgment materials that Hades was operating normally and within industry standards at the time of the incident.

¶22     Mt. Olympus submitted the following evidence to show that Hades was operating normally and within industry standards at the time of the incident. Mt. Olympus's Theme Park Maintenance Supervisor Paul Watson averred that his responsibilities include inspecting and maintaining Hades. He detailed the inspection process for the train, track, and station and averred that this process was in place in August 2019 and used the morning of Lasisi's ride. Watson completed the inspection logs for Hades on the morning of Lasisi's ride and the following day, he found no defects or malfunctions, and he attached the applicable inspection logs to his affidavit. Watson also averred that if any malfunction or other incident with Hades had been reported on the day of the incident, he would have been the person contacted to address the incident and he would have documented the incident in the notes section of the inspection log. Watson averred that he was never advised of any problem with Hades on the day of the incident.

¶23     Mt. Olympus's Safety Director Jason Hammond oversees the safety and operations of the various rides at the park, including Hades. He averred as to the operations of Hades which includes the daily inspection procedures, the

11

required presence of two ride attendants, the safety features of the ride, and the signage warning riders with neck and back issues not to ride. Hammond was personally present when Hades underwent standardized industry testing in 2017 and in July 2019, one month before the incident, and personally received the resulting reports which showed Hades was operating within normal industry standards. He averred that no substantial adjustments or changes were made to Hades between the test on July 16, 2019, and Lasisi's ride on August 25, 2019.

¶24     Mt. Olympus retained Dr. Charles Monson, an expert in mechanical engineering, who prepared an expert report for this case. Monson conducted the 2017 and 2019 inspections of Hades and prepared the reports that Hammond received detailing Monson's evaluation of Hades and that it met industry operating standards. In Monson's expert report prepared for this case, Monson concluded that "Hades … was maintained in an industry acceptable manner with no indication of any malfunction"; the test data complied with industry standards; and the test data showed "the dynamic forces experienced on Hades … are well within industry accepted limits."

¶25     Outside of speculation, Lasisi does not present any facts in his summary judgment materials that Hades was being maintained or operated, or that it performed, in any manner or condition that breached Mt. Olympus's duty of care under common law negligence or violated the safe place statute. Lasisi hypothesizes that the abrupt stop in the course of the Hades ride was caused by a ride attendant applying an emergency break button from the control panel or by a ride malfunction. But speculation is insufficient to create a material issue of disputed fact to overcome Mt. Olympus's averments and other summary judgment materials that the Hades ride was operating normally and within industry standards during the incident. *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct.

App. 1991) ("A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (citation omitted)).  Lasisi offers no support besides conjecture that an attendant applied the emergency break.  And Lasisi fails to refute Mt. Olympus's argument that expert testimony, which Lasisi did not provide, is required to support a claim that a ride malfunction occurred.  Therefore, we deem the issue of the necessity of obtaining an expert to support Lasisi's ride malfunction theory conceded.  *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in a response brief may be taken as concession).

¶26     Moreover, Lasisi develops no legal argument that the facts he alleges support his legal claims that Mt. Olympus breached a duty of care or violated the safe place statute.  Lasisi does not develop a legal argument that abrupt stops during an aggressive roller coaster ride, of which people with certain conditions, including back conditions, were warned against riding, the application of an emergency break, or any other malfunction constitute a breach of duty or an unsafe condition associated with Mt. Olympus's property.  In fact, he does not even argue that abrupt stops are abnormal when riding an aggressive roller coaster.  Lasisi makes a brief reference to a loose lap bar and similarly fails to articulate how this might constitute a breach of a duty or a violation of the safe place statute.

¶27     In sum, Lasisi neither presents sufficient facts in opposition to Mt. Olympus's averments and other evidence that Hades was operating normally and within industry standards on the day in question, nor develops a legal argument that the facts he does allege support either of his legal claims.

Therefore, we conclude that Mt. Olympus is entitled to summary judgment in its favor as a matter of law.[6]

## CONCLUSION

¶28   Accordingly, for the reasons stated above, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Mt. Olympus also argues that we should reject Lasisi's reliance on res ipsa loquitor to support his negligence claim.  On appeal, Lasisi presents no argument that res ipsa loquitor supports his negligence claim or renders summary judgment improper.  Lasisi also does not refute Mt. Olympus's argument that res ipsa loquitur is inapplicable on the facts here.  For these reasons, we do not address a res ipsa loquitor claim.  *See United Coop.*, 304 Wis. 2d 750, ¶39 (appellant's failure to respond in reply brief to argument made in a response brief may be taken as concession).